City of Columbus, Appellee, *v.* Fraley, Appellant.
City of Columbus, Appellee, *v.* Beal, Appellant.

(Nos. 74-125 and 74-177—Decided March 12, 1975.)

174

*Mr. James J. Hughes, Jr.*, city attorney, *Mr. Daniel W. Johnson, Mr. Michael C. Matuska* and *Miss Phyllis F. Kunkler*, for appellees.

*Mr. Alexander M. Spater*, for appellant Fraley.

*Mr. John Quigley*, for appellant Beal.

PAUL W. BROWN, J.

## I

Appellants were convicted for the alleged use of obscene language on a public street. Upon appeal, both convictions were affirmed, on the theory that the words in question were "fighting words." We reverse.

Section 2327.01 of the Columbus Code of Ordinances provides that:

"No person shall disturb the good order and quiet of the city by * * * using obscene or profane language in any street or other public place * * *."

In applying such statutory proscription, appellants could properly be convicted only if the language they used was legally obscene. Clearly, such was not the case.

In *Cohen* v. *California* (1971), 403 U. S. 15, the defendant was arrested for wearing a jacket bearing the words "Fuck the Draft." In reversing his conviction, the United States Supreme Court declared, at page 20:

"Whatever else may be necessary to give rise to the states' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic. *Roth* v. *United States* (1957), 354 U. S. 476. It cannot plausibly be maintained that this vulgar allusion to the Selective Service System would conjure up such psychic stimulation in anyone likely to be confronted with Cohen's crudely defaced jacket."

In *Hess* v. *Indiana* (1973), 414 U. S. 105, the defendant was arrested for yelling, during the course of an anti-war demonstration: "We'll take the fucking street later," or "We'll take the fucking street again." In reversing his conviction, the United States Supreme Court declared, at page 107:

"It is clear that the Indiana court specifically abjured any suggestion that Hess' words could be punished as obscene under *Roth* v. *United States,* 354 U. S. 476 (1957), and its progeny. Indeed, after *Cohen* v. *California,* 403 U. S. 15 (1971), such a contention with regard to the language at issue would not be tenable. * * *''

This court has consistently applied the definitions of obscenity laid down by the United States Supreme Court. In *Columbus* v. *Williams* (1973), 36 Ohio St. 2d 7, we reversed a conviction for the alleged violation of R. C. 2905.301, which prohibits the utterance of "obscene or licentious language in the presence or hearing of a female * * *." In *Columbus* v. *Schwarzwalder* (1974), 39 Ohio St. 2d 61, we reversed two convictions for the alleged violation of Section 2327.01 of the Columbus Code of Ordinances, the ordinance before us in the present cases. This court has recognized, as we noted in *Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d 107, 110, that "no spoken words are obscene unless they serve to erotically stimulate."

Though *Roth* v. *United States, supra,* has been supplanted by *Miller* v. *California* (1973), 413 U. S. 15, certain prerequisites to a finding of obscenity remain the same. At the very least, obscene language must appeal to a prurient interest in sex, as that interest is defined by applying contemporary community standards. "[S]uch expression must be, in some significant way, erotic." *Cohen, supra.* As a matter of law, the language used by the appellants herein falls short of that proscription.

## II

Appellants were arrested, tried, and convicted for the use of obscene language. In both cases, the Court of Appeals affirmed, not because the words used were obscene, but rather because they constituted "fighting words." Such a result denies the appellants due process of law.

Obscene expression and fighting words are separate and distinct exceptions to the freedom of speech protected by the First Amendment. Obscene expression, as indicated herein, must involve an appeal to a prurient interest in sex. Fighting words, on the other hand, are those words which "by their very utterance inflict injury or are likely to pro-

voke the average person to an immediate retaliatory breach of the peace.'' *Cincinnati* v. *Karlan, supra,* at 110. In making a determination whether specific language constitutes fighting words, it is irrelevant that such words may also be legally obscene.

Appellants were charged and tried on an obscene-language theory, and defended against such a charge. The trial judge in each case instructed the jury as to the meaning of obscene language, but not as to fighting words. Nevertheless, the Court of Appeals affirmed both convictions on a fighting-words theory. Thus, appellants stand convicted on charges to which they have had no opportunity to respond.

In *Cole* v. *Arkansas* (1948), 333 U. S. 196, the defendants were charged under an Arkansas statute which prohibited the use of force and violence, in section one, and the promotion of an unlawful assemblage, in section two. The trial court instructed the jury on section two only, and the defendants were convicted. Upon appeal, the Supreme Court of Arkansas affirmed, not on the basis of section two, but on the theory that the defendants had violated section one.

The United States Supreme Court reversed, declaring, at page 201:

''No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. * * * If, as the state Supreme Court held, petitioners were charged with a violation of Section 1, it is doubtful both that the information fairly informed them of that charge and that they sought to defend themselves against such a charge; it is certain that they were not tried for or found guilty of it. It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made. * * *''

The judgments of the Court of Appeals in case Nos. 74-125 and 74-177, affirming the convictions of appellants

for violations of Section 2327.01 of the Columbus Code of Ordinances, are reversed.

## III

In case No. 74-125, appellant Fraley was also convicted for violating Section 2355.01 of the Columbus Code of Ordinances. That section provides that:

"No person shall strike or assault a police officer or draw or lift any weapon or offer any violence against a police officer, when said police officer is in the execution of his office."

Appellant contends that if her arrest for the alleged use of obscene language was illegal, she was privileged to use force in resisting it. We disagree.

At common law, the right to resist an unlawful arrest was unquestioned. The United States Supreme Court applied the doctrine in *John Bad Elk* v. *United States* (1900), 177 U. S. 529, and Ohio courts have done likewise. *Columbus* v. *Holmes* (1958), 107 Ohio App. 391; *Columbus* v. *Guidotti* (App., 1958), 81 Ohio Law Abs. 33.

More recently, however, the rule has been severely criticized. Section 5 of the Uniform Arrest Act abrogates the right whenever "a person has reasonable ground to believe that he is being arrested by a peace officer * * * regardless of whether or not there is a legal basis for the arrest." Section 3.04 (2) (a) (i) of the American Law Institute's Model Penal Code prohibits the use of force "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." At least six states have abolished the common-law doctrine by statute,[1] and at least three others have done so by judicial decision.[2]

---

[1] The right to resist an arrest has been eliminated by legislative action in California, Delaware, Illinois, New Hampshire, New York, and Rhode Island. Section 834a, Cal. Penal Code; Section 1905, Title 11, Del. Code; Section 7-7, Chap. 38, Ill. Stat.; Section 594:5, N. H. Rev. Stat.; Section 35.27, N. Y. Penal Law; Section 12-7-10, R. I. Gen. Laws (1956).

[2] The right to resist an arrest has been abolished by judicial decision in Alaska, Idaho, and New Jersey. See *Miller* v. *State* (Alaska 1969), 462 P. 2d 421; *State* v. *Richardson* (1973), 95 Idaho 446, 511 P. 2d 263, certiorari denied, 414 U. S. 1163; *State* v. *Koonce* (1965), 89

The reason for such change is clear. Since 1709, when the doctrine was pronounced in *The Queen* v. *Tooley* (1709), 2 Ld. Raym. 1296, 92 Eng. Rep. 349, society has changed drastically. Nations once rural and agrarian have become urban and industrialized. Policemen who once employed staves and swords to effect arrests now use guns and sophisticated weapons. The era "when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery," is past. Warner, The Uniform Arrest Act, 28 Va. L. Rev. 315. Modern-day defendants reap the benefits of "liberal bonding policies, appointed counsel in the case of indigency, and the opportunity to be taken before a magistrate for immediate arraignment and preliminary hearing." *State* v. *Richardson* (1973), 95 Idaho 446, 450, 511 P. 2d 263.

Considerations of this type have prompted both courts and legislatures to look anew at, and often abandon, the common law rule. Thus, in *State* v. *Koonce* (1965), 89 N. J. Sup. 169, 183, 214 A. 2d 428, the Appellate Division of the New Jersey Superior Court declared:

"* * * an appropriate accommodation of society's interests in securing the right of individual liberty, maintenance of law enforcement, and prevention of death or serious injury not only of the participants in an arrest fracas but of innocent third persons, precludes tolerance of any formulation which validates an arrestee's resistance of a police officer with force merely because the arrest is ultimately adjudged to have been illegal. Force begets force, and escalation into bloodshed is a frequent probability. The right or wrong of an arrest is often a matter of close debate as to which even lawyers and judges may differ. In this era of constantly expanding legal protections of the rights of the accused in criminal proceedings, one deeming himself illegally arrested can reasonably be asked to submit peaceably to arrest by a police officer, and to take recourse

N. J. Sup. 169, 214 A. 2d 428; *State* v. *Mulvihill* (1970), 57 N. J. 151, 270 A. 2d 277; *State* v. *Washington* (1970), 57 N. J. 160, 270 A. 2d 282. *See, also, United States* v. *Heliczer* (C. A. 2, 1967), 373 F. 2d 241; *United States* v. *Simon* (C. A. 7, 1969), 409 F. 2d 474.

in his legal remedies for regaining his liberty and defending the ensuing prosecution against him. At the same time, police officers attempting in good faith, although mistakenly, to perform their duties in effecting an arrest should be relieved of the threat of physical harm at the hands of the arrestee."

Similarly, in *Miller* v. *State* (1969), 462 P. 2d 421, 426, the Supreme Court of Alaska stated:

"The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined. Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all."

We agree with those courts and legislatures which have chosen to abandon the rule allowing forcible resistance to arrest. We believe it essential that potentially violent conflicts be resolved, not in the streets, but in the courts. Thus, we hold that in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances.

In the present case, appellant Fraley was arrested by uniformed police officers for an alleged violation of Section 2327.01 of the Columbus Code. No evidence whatever indicates that police officials used excessive or unnecessary force. Rather, the record shows that when police officials attempted to place appellant under arrest, she swung her arms, yelled, kicked them, broke away, and ran across the street into her house. Such conduct was clearly sufficient to warrant her conviction for using violence against a police officer under Section 2355.01.

The judgment of the Court of Appeals in case No. 74-125, affirming appellant's conviction for violating Sec-

tion 2355.01 of the Columbus Code of Ordinances, is affirmed.

> *In case No. 74-177, judgment reversed.*
> *In case No. 74-125, judgment affirmed*
> *in part and reversed in part.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.