CITY OF MIDDLEBURG HEIGHTS, APPELLEE, *v.* THEISS ET AL., APPELLANTS.

(Nos. 49458 through 49461 — Decided October 15, 1985.)

*Peter H. Hull,* city prosecutor, for appellee.

*Rees Davis,* for John M. Theiss.

*Thomas W. Sharratt,* for Kelly Nemier.

PARRINO, C.J. Defendant John Theiss has appealed his convictions of assault[1] and resisting arrest.[2] Similarly, Kelly Nemier has appealed her convictions of assault and resisting arrest. The violations took place in the city of Middleburg Heights and arose out of the same transaction and occurrence. As such, this court has consolidated the appeals for briefing, hearing, and disposition.

I

The facts giving rise to this appeal are as follows. On August 4, 1983, the Middleburg Heights police received a complaint about loud noise coming from 6985 South Parkway Drive. Officers Parobechek and Smith responded to the call. According to their testimony, loud music was coming from the rear of the home. The police went around to the back of the home to investigate. They approached the screen door at the rear of the house and discovered an individual playing his electric guitar with the amplifier set very high. The officers then requested that the amplifier be turned down. The individual playing the guitar, Lee Nemier, refused. The officers then asked to be permitted to enter the home to discuss the matter further. Kelly Nemier, Lee's older sister, refused to let the officers into the house stating that they had no such right absent a search warrant. Officer Parobechek then picked up a nearby shovel and used it to pry open the door.

Officer Parobechek entered the home walking past John Theiss, who did not physically resist his entry into the home. Kelly Nemier, however, jumped in front of Parobechek but was pushed aside. At that point John Theiss grabbed Parobechek from the back. Officer Smith, who had followed Parobechek into the house, pulled Theiss off Parobechek and, after a brief struggle, placed him under arrest. Parobechek then proceeded to arrest Lee Nemier, but before the officer could actually make the arrest, Kelly Nemier jumped in his path and attempted to knee him in the groin. She was pushed aside again and Lee Nemier was arrested. After placing Lee Nemier into the police car, Kelly Nemier was informed that she too was under arrest. After a short struggle she was placed in the squad car.

The defendants' version of what happened was quite different. The defendants testified that Lee Nemier was not playing his guitar when the police came to the door. They further testified that when the officers were not given permission to enter the home to discuss the alleged noise complaint, they both became very angry and broke into the house. Officer Parobechek then rushed at Kelly Nemier, pushed her to the ground and twisted her arm until she stopped screaming. John Theiss then yelled to Parobechek urging that he stop mistreating Kelly because she was only a girl. Smith then allegedly grabbed Theiss, threw him to the ground and began beating his head against the floor. Lee Nemier, Kelly Nemier, and John Theiss were then arrested.

On or about April 17, 1984, Kelly Nemier and John Theiss were tried

---

[1] The crime of assault was in violation of Middleburg Heights Codified Ordinance Section 636.02(a) which provides as follows:

"No person shall knowingly cause or attempt to cause physical harm to another."

[2] The crime of resisting arrest was in violation of Middleburg Heights Codified Ordinance Section 606.16 which provides as follows:

"No person recklessly or by force shall resist or interfere with a lawful arrest of himself or another."

before a jury on charges of assault, resisting arrest, and disorderly conduct. At the close of the state's case, the trial court dismissed the disorderly conduct charges. At the conclusion of the trial the defendants were each found guilty of assault and resisting arrest.

The appellants filed timely appeals and in a single brief raise three assignments of error.

## II

First assignment of error:

"Absent consent or exigent circumstances police officers may not make a warrantless entry into a suspect's home to arrest him and such an arrest is prohibited by the Fourth Amendment."

The appellants contend that the police officers illegally entered the residence to arrest Lee Nemier. The appellants' contention is persuasive.

In *Payton* v. *New York* (1980), 445 U.S. 573, the United States Supreme Court held that absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment. Although the court declined to consider the scope of exigent circumstances that might justify a warrantless home arrest, it made it clear that such searches are presumptively unreasonable. *Id.* at 586.

Further, in *Welsh* v. *Wisconsin* (1984), 466 U.S. 740, the court noted that where the government's interest is only to arrest for a minor offense, the presumption that a warrantless search is unreasonable is difficult to rebut, and that the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate. *Id.* at 750-753. The court in *Welsh* then concluded that exigent circumstances did not exist where the police entered a home without a warrant to arrest an individual for drunk driving. In coming to this conclusion, the court rejected the state's contention that the evidence

would be destroyed and that the defendant was a danger to the public.

Finally, in *State* v. *Lee* (1983), 8 Ohio Misc. 2d 28, the Hamilton County Municipal Court held that absent probable cause and exigent circumstances, the police cannot make a warrantless entry into the defendant's home for a misdemeanor arrest. *Id.* at 30. The court concluded that exigent circumstances did not exist where the misdemeanor was disorderly conduct, the police had surrounded the house and had ample time to get a warrant.

Likewise, in the instant case, the police sought to arrest Lee Nemier for disorderly conduct, a misdemeanor; several police were at the house, thus making it unlikely that Lee Nemier would attempt to flee; and the offense occurred in the early afternoon when the courts were open and a warrant could have been obtained in a reasonably short time. Therefore, it is very likely that the officers should in fact have obtained a warrant prior to entering the home.

However, although the appellants' contention is compelling, the resolution of that issue is not critical to the disposition of the case. Instead, the critical issue to resolve is whether, assuming the entrance was unlawful, the defendants were then privileged to assault police officers *after* they had gained entrance into the home. We think not.

At common law, reasonable resistance to unlawful police conduct was privileged. See *United States* v. *DiRe* (1948), 332 U.S. 581; *John Bad Elk* v. *United States* (1900), 177 U.S. 529; *Columbus* v. *Holmes* (1958), 107 Ohio App. 391 [8 O.O. 2d 376]; and *Columbus* v. *Guidotti* (App. 1958), 81 Ohio Law Abs. 33. Unlawful entry into a residence is particularly disturbing in light of the recognized privacy interest that attaches to a private home. Thus, at common law, resistance to unlawful entry by police was recognized to have an even greater privilege when such entry was

made into private premises. See *United States* v. *Ferrone* (C.A.3, 1971), 438 F.2d 381, 390; *State* v. *Cesero* (1959), 146 Conn. 375, 151 A.2d 338; *White* v. *Morris* (La. 1977), 345 So.2d 461, 467.

In recent years, many states have greatly restricted an individual's right to resist.[3] Ohio has followed this trend and in *Columbus* v. *Fraley* (1975), 41 Ohio St. 2d 173 [70 O.O. 2d 335], the Supreme Court held in paragraph three of its syllabus:

"In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances."

In reaching this conclusion, the court reasoned that society has changed and that the old rule is not appropriate today. More specifically, defendants today have the benefits of liberal bonding policies, appointment of counsel in the case of indigency, and the opportunity to be taken before a magistrate for immediate arraignment and preliminary hearing. *Id.* at 179, citing *State* v. *Richardson* (1973), 95 Idaho 446, 511 P.2d 263. The court also noted the fact that officers today are typically armed with sophisticated weapons that render resistance dangerous especially to the arrestee.

In *State* v. *Pembaur* (1984), 9 Ohio St. 3d 136, the Supreme Court restricted the privilege to resist unlawful entry into the business premises. In *Pembaur*, deputies sought access to a doctor's private office. The defendant resisted and the deputies had to break through the office door with an ax. The court, applying *Fraley, supra,* concluded that absent bad faith, an occupant of a business cannot obstruct the officer in the discharge of his duty whether or not the officer's actions are lawful under the circumstances.

The extent of the privilege to resist unlawful entry into the home has yet to be dealt with in Ohio. The United States Supreme Court has repeatedly held, however, that searches and seizures inside a home without a warrant are presumptively unreasonable. *Steagald* v. *United States* (1981), 451 U.S. 204; *Payton* v. *New York* (1980), 445 U.S. 573; and *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443. An occupant can act on that presumption and refuse admission. The Fourth Amendment gives him a constitutional right to refuse to consent to entry and search. The assertion of that right cannot be a crime. *Camara* v. *Municipal Court* (1967), 387 U.S. 523, 530-533; *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, 233; *District of Columbia* v. *Little* (1950), 339 U.S. 1, 7; *United States* v. *Prescott* (C.A.3, 1978), 581 F.2d 1343; *Miller* v. *United States* (C.A.5, 1956), 230 F.2d 486.

It is clear from these cases that an individual can lawfully refuse to consent to a warrantless search. Further, we recognize, consistent with the aforementioned cases, that there exists at least some limited right to resist entrance, such as locking or closing the door or physically placing one's self in the officer's way.[4] We do not, however,

---

[3] The right to resist an arrest has been eliminated by legislative action in California, Delaware, Illinois, New Hampshire, New York and Rhode Island. The right to resist an arrest has been abolished by judicial decision in Alaska, Idaho and New Jersey.

[4] We do not at this time determine the extent of permissible resistance. It is clear, however, that passive resistance is more likely to be privileged than a physical attack on the officer.

recognize the appellants' conduct herein as privileged. This is because the offenses charged do not relate to the entry of the premises. The charges stem from assaults on the police officers with the intent to cause injury *after access had been gained.* We hold, therefore, that violence against an officer after he has gained entrance into the residence, albeit unlawfully, with a purpose to cause physical injury rather than to resist entry, is not privileged conduct. Such conduct not only impedes the police but endangers all parties involved. Accordingly, appellants' convictions must be affirmed. The first assignment of error is overruled.

## III

Second assignment of error:

"The court committed error prejudicial to appellant, Kelly Nemier, in allowing the admission into evidence [of] a conviction of a misdemeanor offense."

Appellant contends that admission into evidence of the fact that Kelly Nemier had previously been convicted of petty theft violated the Rules of Evidence. We disagree.

Evidence Rule 609(A) provides as follows:

"(A) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) *involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance.*"

In *State* v. *Johnson* (1983), 10 Ohio App. 3d 14, the court expressly held that petty theft was a crime of dishonesty within the meaning of Evid. R. 609

(A)(2). Therefore, Kelly Nemier's past conviction of petty theft was properly admitted pursuant to Evid. R. 609(A)(2). Accordingly, appellants' second assignment of error is overruled.

## IV

Third assignment of error:

"Ohio Revised Code Section 2935.12 authorizing an officer to forcibly enter a house to make a warrantless arrest of a person or to conduct a search of the premises, in the absence of exigent circumstances, violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Constitution of Ohio, and a jury instruction by a trial court in the exact language of said statute, without qualification, is manifestly and patently prejudicial to a defendant."

This assignment of error also lacks merit.

R.C. 2935.12 provides as follows:

"When making an arrest or executing a warrant for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search, he is refused admittance, but an officer executing a search warrant shall not enter a house or building not described in the warrant."

In determining whether the statute is constitutional, it must first be noted that a legislative act is presumed to be valid. *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134]. Further, before this court may hold a statute to be unconstitutional, such infirmity must appear beyond a reasonable doubt. *Id.* at 147. In examining the plain language of the statute, we find no such infirmity.

The statute does not provide, as the appellants state, that an officer may for-

cibly enter a house to make a warrantless arrest absent exigent circumstances. The statute simply provides when an officer may use force to enter a home to make an arrest, execute a warrant for the arrest of a person, or execute a search warrant. The statute does not negate the requirement that the arrest or execution of a warrant be lawful, *i.e.,* not in violation of the Fourth Amendment. Therefore, R.C. 2935.12 permits an officer to use force to enter a home where first, the officer has a right to enter the home to make an arrest or conduct a search, either by way of a warrant, or by way of one of the exceptions to the prohibition of warrantless entries as delineated by the courts; and second, the officer has given notice of his intention to make such arrest or search, and he is refused admittance. In light of this rational interpretation, we conclude that R.C. 2935.12 is not unconstitutional.

Also, it is not necessary to consider whether the R.C. 2935.12 instruction was prejudicial in the instant case. As stated in the first assignment of error, the question of whether the entrance was lawful is not critical to the resolution of this case. The critical issue, which was resolved under Part II of this opinion, was whether, assuming the entrance was unlawful, the appellants were then privileged to assault police officers after they had gained entrance into the home.

Accordingly, the appellants' third assignment of error is overruled.

## V

The judgments are affirmed.

*Judgments affirmed.*

KRUPANSKY, J., concurs.

PATTON, J., concurs in judgment only.