**CITY OF STRONGSVILLE, Appellee,**

v.

**WAIWOOD et al., Appellants.**

[Cite as *Strongsville v. Waiwood* (1989), 62 Ohio App.3d 521.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 54799 to 54803.

Decided March 27, 1989.

*Joseph A. Gambino*, for appellee.

*Donald P. McFadden* and *John P. Lutseck*, for appellants.

DYKE, Judge.

At approximately 9:30 a.m. on Saturday, June 27, 1987, Strongsville Police Officers Laura Miller and Noah Bentley attempted to execute an arrest warrant on the defendant-appellant Ann Waiwood at her home at 13090 West 130th Street, Strongsville, Ohio. During this event, an argument and scuffle took place between Ann Waiwood's husband, Michael Waiwood, and the police officers.

As a result of these events, the city of Strongsville filed four complaints against the appellant Michael Waiwood and one complaint against the appellant Ann Waiwood. Two of the complaints against Michael Waiwood charged him with resisting arrest in violation of Strongsville Codified Ordinances Section 606.16(A), and the other complaints charged him with assault in violation of Strongsville Codified Ordinances Section 636.02(A). The complaint against Ann Waiwood charged her with resisting arrest in violation of Section 606.16(A).

On October 9, 1987, the appellants' case went to trial, and the jury found the appellants guilty of all the charges against them.

Appellants timely appealed their convictions, and on June 15, 1988, we consolidated for purposes of briefing, hearing and disposition of all of the appellants' cases. Each appellant has filed a separate brief. However, most of the assignments of error in the respective briefs are identical. Accordingly, we will discuss together all similar assignments of error.

Appellants' first and third assignments of error are:

"The trial court erred in failing to dismiss the resisting arrest charges against the Waiwoods on the grounds that the arrest of Ann Waiwood was unlawful.

"The trial court erred in failing to find that the Fourth Amendment to the United States Constitution applied to the arrest of the defendants Waiwood and in failing to find the arrest illegal."

Strongsville Codified Ordinances Section 606.16 defines the crime of resisting arrest. As an element of this crime, Section 606.12 requires the city to prove that a defendant resisted or interfered with a lawful arrest. Prior to trial, the appellants filed a motion to dismiss the resisting arrest charges against them. They based their motion on the arguments that the warrant for Ann Waiwood's arrest was defective, that her arrest was illegal, and therefore, that all the elements of resisting arrest could not be proven by the appellee city. The trial court overruled the appellants' motion, and the appellants now assign this ruling as error.

In *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, the court held:

"In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Id.* at paragraph three of the syllabus.

The above would seem to buttress the position that the state need not show a lawful arrest to prove that a defendant resisted an arrest. The problem with this analysis, however, is that the court in *Fraley* was not discussing the crime of resisting an arrest. The *Fraley* court was interpreting a Columbus ordinance which made it a crime to assault a police officer who was in the execution of his office. It is well established that all crimes are statutory and each element necessary to constitute a crime must be proven. *State v. Cimpritz* (1953), 158 Ohio St. 490, 49 O.O. 418, 110 N.E.2d 416. A lawful arrest was not an element of the Columbus ordinance discussed in *Fraley*. However, a lawful arrest is an element of Strongsville Codified Ordinances Section 606.16 under which the appellants were charged. Though the court in *Fraley* may have set forth social policy for the state of Ohio, it did not change the specific elements of the legislation which defines the crime of resisting arrest. Accordingly, the state had to prove as elements of the appellants' charges for resisting arrest that the arrests were lawful. Accord *Hoover v. Garfield Heights Municipal Court* (C.A.6, 1986), 802 F.2d 168.

In regard to the element of a lawful arrest, the trial court in this case stated prior to overruling the appellants' motion to dismiss that:

" * * * [T]he term 'lawful' isn't something borne on the scales of justice. The term 'lawful' relates to the mechanics of the arrest. That is, did they break into the house? Did they threaten these people? That would certainly be an unlawful arrest, and the person subjected to that sort of treatment would have a right to resist. That's what I consider the term 'lawful' to mean. I don't believe that it means something in the highly academic sense

that we're talking about, legitimacy of content, the legitimacy of the issuance of a warrant without a complaint, all that sort of thing. I don't believe that that's what they're talking about."

The court was partially correct in its definition of the term lawful arrest. In *State v. Pembaur* (1984), 9 Ohio St.3d 136, 9 OBR 385, 459 N.E.2d 217, the court held that "[a]bsent bad faith on the part of a law enforcement officer an occupant of business premises cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances * * *." *Id.* at syllabus. Further, Ohio courts have upheld the lawfulness of an arrest when police had a reasonable basis for making the arrest. See *State v. Kirchner* (1984), 19 Ohio Misc.2d 7, 19 OBR 183, 483 N.E.2d 497; *State v. Johnson* (1982), 6 Ohio App.3d 56, 6 OBR 268, 453 N.E.2d 1101. However, this does not end our analysis, for the trial court erred in holding that the conduct of the police is the only factor in determining whether an arrest is legal. It is well settled that criminal ordinances must be construed most strongly against a city and in favor of the accused. See R.C. 2901.04; *Vermillion v. Stevenson* (1982), 7 Ohio App.3d 170, 7 OBR 215, 454 N.E.2d 965. And a defective arrest warrant may render an arrest illegal regardless of the reasonableness of police conduct. See *Whitley v. Warden* (1971), 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; *State v. Gough* (1986), 35 Ohio App.3d 81, 519 N.E.2d 842; and *State v. Wright* (Apr. 28, 1987), Cuyahoga App. No. 52173, unreported, 1987 WL 11672. In light of the above, the question for our review is whether the arrest warrant issued in this case was defective such that it rendered Ann Waiwood's arrest illegal.

It was undisputed that the court that issued the arrest warrant against Ann Waiwood did so because she failed to attend a hearing the court had scheduled pursuant to R.C. 2947.14. This hearing was scheduled because of Ann Waiwood's failure to pay court costs arising from the dismissal of a traffic citation against her.

R.C. 2947.14 provides:

"(A) If a fine is imposed as a sentence or a part of a sentence, the court or magistrate that imposed the fine may order that the offender be committed to the jail or workhouse until the fine is paid or secured to be paid, or he is otherwise legally discharged, if the court or magistrate determines at a hearing that the offender is able, at that time, to pay the fine but refuses to do so. The hearing required by this section shall be conducted at the time of sentencing.

"(B) At the hearing, the offender has the right to be represented by counsel and to testify and present evidence as to his ability to pay the fine. If a court or magistrate determines after considering the evidence presented by an

offender, that the offender is able to pay a fine, the determination shall be supported by findings of fact set forth in a judgment entry that indicate the offender's income, assets, and debts, as presented by the offender, and his ability to pay.

"(C) If the court or magistrate has found the offender able to pay a fine at a hearing conducted in compliance with divisions (A) and (B) of this section, and the offender fails to pay the fine, a warrant may be issued for the arrest of the offender. Any offender held in custody pursuant to such an arrest shall be entitled to a hearing on the first regularly scheduled court day following the date of arrest in order to inform the court or magistrate of any change of circumstances that has occurred since the time of sentencing and that affects his ability to pay the fine. The right to the hearing on any change of circumstances may be waived by the offender."

Since the money owed by Ann Waiwood to the Berea Municipal Court was for court costs, not a fine, the court had no statutory authority to hold a hearing under R.C. 2947.14 to force Ann Waiwood to pay those costs. In discussing court costs, the court in *Strattman v. Studt* (1969), 20 Ohio St.2d 95, 49 O.O.2d 428, 253 N.E.2d 749, held:

"The duty to pay court costs is a civil obligation arising from an implied contract.

"Obligations arising upon implied contracts and judgments thereon are debts, within the purview of Section 15, Article I of the Ohio Constitution, which forbids imprisonment for debt in civil actions. (Paragraph one of the syllabus of *Second National Bank of Sandusky v. Becker*, 62 Ohio St. 289 [56 N.E. 1025], approved and followed.)" *Strattman, supra,* paragraphs six and seven of the syllabus.

■ Municipal courts are not established by the Ohio Constitution, but are created by statute. See R.C. Chapter 1901. It is settled that "[a] court created by statute * * * has only limited jurisdiction, and may exercise only such powers as are directly conferred by legislative action. *Oakwood v. Wuliger* (1982), 69 Ohio St.2d 453, 454, 23 O.O.3d 398, 399, 432 N.E.2d 809, 811 [citation omitted]." *State, ex rel. Johnson, v. Perry Cty. Court* (1986), 25 Ohio St.3d 53, 54, 25 OBR 77, 78, 495 N.E.2d 16, 18. Since the Berea Municipal Court was without statutory authority to hold a hearing on this matter, it had no jurisdiction to hold such a hearing. It could collect on this judgment for costs "only by the methods provided for the collection of civil judgments." *Strattman, supra,* 20 Ohio St.2d at 103, 49 O.O.2d at 432, 253 N.E.2d at 754.

R.C. 1901.13 provides in part:

"(A) In any action or proceeding of which a municipal court has jurisdiction, the court or any judge of the court has the power to do all of the following:

"(1) Issue process, preserve order, punish contempts * * * and to exercise any other powers that are necessary to give effect to the jurisdiction of the court and to enforce its judgments, orders, or decrees;

"(2) Issue any necessary orders in any proceedings before and after judgment, for attachment or garnishment, arrest * * * for which authority is conferred upon the courts of common pleas or a judge of the court of common pleas * * *."

Since the municipal court did not have jurisdiction to hold a hearing on Ann Waiwood's failure to pay court costs, the court did not have the power under R.C. 1901.13 to punish Ann Waiwood for her failure to attend that hearing. Therefore, the arrest warrant issued by the Berea Municipal Court for Ann Waiwood's arrest was unlawful and her arrest itself was unlawful. Further, since Ann Waiwood's arrest was unlawful, the city of Strongsville could not as a matter of law prove all the elements of the resisting arrest charge against Ann Waiwood. Further, the charge against Michael Waiwood for resisting Ann Waiwood's arrest was also defective for this reason.

■ Because the city of Strongsville could not as a matter of law prove that the appellants resisted Ann Waiwood's lawful arrest, the court should have dismissed these charges. It was unreasonable for the court to overrule the appellants' motion as to these charges, and the court abused its discretion in this regard. Accordingly, the appellants' convictions for resisting Ann Waiwood's arrest are reversed.

Appellants' first and third assignments of error are well taken.

Appellants' fourth assignments of error are:

"The trial court erred in determining that Ohio Revised Code Section 2935.12 was not unconstitutional as applied."

Prior to trial, the appellants filed a motion in which they asked the court to declare the appellants' arrests unlawful because the police did not follow the requirements of R.C. 2935.12 in executing Ann Waiwood's arrest warrant. R.C. 2935.12 provides:

"When making an arrest or executing a warrant for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search, he is refused admittance * * *."

The trial court overruled the appellants' motion to declare the arrests illegal, and the appellants claim that the court erred in this regard.

First, we have already determined under the discussion of the first and third assignments of error that the appellants' convictions for resisting Ann Waiwood's arrest were invalid. Accordingly, an analysis of whether the police properly entered the Waiwood home has no bearing on these two charges. The issue is moot.

Second, pursuant to *Middleburg Heights v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226, the legality of the police entry into the Waiwood home was irrelevant to the charges against Michael Waiwood for assault and for resisting his own arrest. In *Theiss, supra,* police went to the defendants' home because of complaints about loud noise. Upon approaching a screen door, the police saw a defendant playing an electric guitar. They asked him to turn it down. Another defendant refused the officers admittance. The officers then forced their way into the house and a scuffle ensued.

In upholding the defendants' convictions for resisting arrest and assault, this court held that:

" * * * [T]here exists at least some limited right to resist entrance, such as locking or closing the door or physically placing one's self in the officer's way. We do not, however, recognize the appellants' conduct herein as privileged. This is because the offenses charged do not relate to the entry of the premises. The charges stem from assaults on the police officers with the intent to cause injury after *access had been* gained. We hold, therefore, that violence against an officer after he has gained entrance into a residence, albeit unlawfully, with a purpose to cause physical injury rather than to resist entry, is not privileged conduct. Such conduct not only impedes the police but endangers all parties involved." *Id.* at 4–5, 28 OBR at 13, 501 N.E.2d at 1230.

In this case, the evidence showed that Michael Waiwood assaulted Officers Bentley and Miller after they had been in the house for several minutes. Further, evidence also showed that Michael Waiwood resisted after the officers told him he was under arrest for obstruction of official business and for assault. Since the charges against Michael Waiwood for assault and for resisting his own arrest arose after the officers were already in the house, R.C. 2935.12 has no relevance to those charges. Michael Waiwood's arrest on these charges was not unlawful in regard to R.C. 2935.12. Appellants' arguments as to the unconstitutional application of this statute are without merit. These assignments of error are overruled.

Michael Waiwood's fifth assignment of error is:

"The trial court erred in failing to instruct the jury on Michael F. Waiwood's right to self-defense."

■ Pursuant to *Columbus v. Fraley, supra,* a person has a right to defend himself from an illegal arrest only if the police use excessive or unnecessary force in making the arrest. Within the context of defining the term "lawful arrest," the trial court quoted the above holding of *Fraley, supra,* in its instructions to the jury. Thus, the court did in fact instruct the jury on Michael Waiwood's right to self defense. This argument of Michael Waiwood is without merit and is overruled.

Michael Waiwood's sixth assignment of error is:

"Strongsville Ordinance 606.16 is unconstitutional as applied to the appellants Waiwood."

■ Under this assignment of error, the appellant Michael Waiwood argues that his comments to the police officers were protected by the First Amendment to the United States Constitution, and therefore, that his and his wife's convictions for resisting arrest were unconstitutional. The problem with this argument is that appellants' convictions were based not on their comments, but on their physical resistance to the attempts of Strongsville Police to arrest them. Accordingly, this argument of Michael Waiwood is without merit and his sixth assignment of error is overruled.

Ann Waiwood's seventh and Michael Waiwood's eighth assignments of error are:

"The jury verdicts were against the manifest weight of the evidence."

■ It is well settled in Ohio that " * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. "In addition, [a] reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

The crime of resisting arrest is defined in Strongsville Codified Ordinances Section 606.16(a). This section provides that "[n]o person, recklessly or by force shall resist or interfere with a lawful arrest of himself or another."

The crime of assault is defined by Strongsville Codified Ordinances Section 636.02(a), and this section provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another."

■ At trial, Strongsville Police Officers Noah Bentley and Laura Jean Miller testified that after Michael Waiwood answered his door, they informed him that they had a warrant for Ann Waiwood's arrest and discussed the

situation with him for about thirty minutes. Finally, Officer Bentley asked Michael Waiwood if Ann was in the house. Bentley testified that Michael Waiwood responded "yes, but she's not going with you." Bentley walked up the porch steps and toward the front entrance of the house. Michael Waiwood stepped in front of the doorway and pushed Bentley back with both hands.

Bentley in return pushed Waiwood. Waiwood fell back through the doorway and landed on a stairway inside the house. Bentley followed Waiwood, flashed his nightstick at Waiwood, and told him that he was under arrest for the obstruction of official police business.

Bentley testified that he tried to pull Waiwood to a standing position several times, and that he told Waiwood "come with me you're under arrest." Waiwood pulled back and stated, "I'm not going with you." Officer Miller testified that she attempted to handcuff Waiwood but could not get his arms behind him. She stated that Waiwood kept struggling, and that the officers were unable to hold him. At that point, Miller went out to the squad car to call for assistance.

Bentley stated that after Miller left, Michael Waiwood began trying to pull himself free. Waiwood pulled himself and Bentley to the dining room while telling Bentley "take your hands off me."

After Miller returned to the scene, Waiwood stated "get your hands off me." Bentley and Miller testified that Waiwood pushed Bentley back several steps and punched Officer Miller in the mouth. During this time, the appellant Ann Waiwood was videotaping the events. The videotape shows that Michael Waiwood shoved Bentley, violently thrust Bentley's arm into Officer Miller's face, and then shoved Officer Miller. At this point, the officers wrestled Michael Waiwood to the ground.

Bentley testified that after the other police officers arrived, he told Michael Waiwood to put his arms behind his back. Bentley and Strongsville Police Officer Joseph Kraemer stated that Michael Waiwood would not cooperate in letting the officers handcuff him, and that they had to force Waiwood to the floor to get the cuffs on him. Officer Ralph Fringley confirmed Bentley and Kraemer's testimony in this regard.

Strongsville Police Sergeant Edward Spickler testified that after he arrived at the scene and was informed by Bentley that Ann Waiwood was under arrest, he informed Ann Waiwood that she was under arrest and would have to accompany him. He said that he was holding her wrist, but she broke away. He grabbed her arm again, and she tried to break away again. This time Spickler handcuffed her hand. However, because she kept struggling, Spickler forced her up against a wall to place the other handcuff on her.

The above discussed testimony and videotape was competent, credible evidence from which the jury reasonably concluded that Michael Waiwood attempted to cause physical harm to Officers Bentley and Miller, and that Waiwood by force resisted his own lawful arrest. Since we have determined that Ann Waiwood's arrest was illegal, the state did not present competent credible evidence which could have proved all the elements of resisting Ann Waiwood's arrest. Therefore, Michael Waiwood's convictions for assault and resisting his own arrest were not against the manifest weight of the evidence, but his and Ann Waiwood's convictions for resisting Ann Waiwood's arrest were against the weight of the evidence.

These assignments of error are sustained in part and overruled in part.

Ann Waiwood's eighth and Michael Waiwood's ninth assignments of error are:

"The trial court erred in failing to grant defendants' motion for acquittal at the end of the state's evidence, at the end of all evidence, and after the jury verdicts."

Crim.R. 29 governs acquittals for insufficient evidence. In interpreting this rule, the Supreme Court has stated:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

We have already determined that Michael Waiwood's convictions for assault and resisting his own arrest were not against the manifest weight of the evidence. In our analysis of these issues, we held that the jury properly concluded that Waiwood was guilty of these charges. It follows, then, that reasonable minds could conclude that the city proved beyond a reasonable doubt the existence of all the elements of these crimes. Therefore, there was sufficient evidence to support Michael Waiwood's convictions for assault and resisting his own arrest. Again, however, since Ann Waiwood's arrest was illegal, the city could not prove that Ann and Michael Waiwood resisted Ann Waiwood's arrest. Therefore, there was insufficient evidence to support these convictions.

These assignments of error are overruled in part and sustained in part.

Ann Waiwood's ninth and Michael Waiwood's tenth assignments of error are:

"The trial court erred in failing to issue sanctions against the city after evidence showed that Prosecutor Gambino failed to disclose material evidence

that had been requested by defendants and that evidence was subsequently destroyed."

It is undisputed that the Strongsville Police Department taped the radio calls made to its dispatcher on June 27, 1987, and that these calls were written down in a radio log.  On July 7, 1987, the appellants filed a request for discovery pursuant to Crim.R. 16.  In this document, the appellants requested a copy of the police radio log and of any tapes of any conversations of police officers.  On July 27, 1987, the tapes of June 27, 1987, were routinely destroyed by the Strongsville Police Department.  On August 4, 1987, the appellee city provided discovery to the appellants, but did not disclose the existence of the tapes or the radio log.

After the appellants' discovery at trial of both the existence of the tapes, and their destruction, the appellants moved to either strike the testimony of the Strongsville police officers or dismiss the charges.  The appellants claimed that the tapes would have shown that officers Bentley and Miller did not stand in front of the Waiwood house for thirty minutes.  The court ruled that it found no prejudice in the fact that the tapes were destroyed and overruled the appellants' motion.  The appellants claim under these assignments of error that the possible inconsistencies between the police officers' testimony and the tapes were exculpatory.  Appellants argue that because the tapes were destroyed, the court as a discovery sanction should have excluded the officers from testifying.

Crim.R. 16(E)(3) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance or prohibit the party from introducing in evidence the material not disclosed or it may make such other order as it deems just under the circumstances."

In *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court held that the state must provide to a defendant any evidence it has which is favorable to the defendant and is material to either his guilt or punishment.  In *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, the court stated that " * * * implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350.  Later in *Agurs* the court stated:

"The proper standard for materiality must reflect our overriding concern with the justice of the finding of guilt.  Such a finding is permissible only if

supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.* at 112–113, 96 S.Ct. at 2401–02, 49 L.Ed.2d at 354–355.

In the context of the entire record, it is clear to us that the taped conversations of June 27, 1987, would not have affected the outcome of this case. First, Officers Bentley and Miller testified that they were in front of the Waiwood home for thirty minutes. In corroboration of this, the police radio log for June 27, 1987, reflected that thirty-six minutes elapsed between the time Bentley and Miller went to execute the arrest warrant and the time Miller radioed for help. Second, the videotape taken by Ann Waiwood corroborated much of the officers' other testimony, and definitively showed that Michael Waiwood assaulted both Bentley and Miller and resisted his own arrest. Third, the length of time spent by the police in front of the Waiwood home was a trivial detail and only collateral to the conduct which gave rise to the charges in this case.

Under these circumstances, it is our opinion that the tape of June 27, 1987, was not material to the appellants' guilt or sentencing, and therefore, the appellants were not denied due process because of the tape's destruction. Because of this, the court did not abuse its discretion in overruling appellants' motions in this regard. These assignments of error are overruled.

Ann Waiwood's eleventh and Michael Waiwood's twelfth assignments of error are:

"The trial court erred in overruling defendants' motion to disqualify Joseph Gambino as prosecuting attorney."

After the appellants' arrest, they filed a civil suit in federal district court against the appellee city. Subsequently, the appellants subpoenaed the appellee's law director to be deposed. They also subpoenaed a representative of the city to bring certain records to a deposition. The prosecutor in this case appeared at these depositions in his official capacity as the law director for the appellee city and as the city's representative for the purpose of delivering records. Prior to the trial of this case, the appellants moved to disqualify the prosecutor on the ground that he had a conflict in being both a witness for the city and the city's prosecutor. The trial court overruled this motion, and the appellants assign this ruling as error.

"A trial court has wide discretion in the exercise of its duty to supervise members of the bar appearing before it." *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 35, 27 OBR 447, 450, 501 N.E.2d 617, 621. In light of this precedent, the fact that the appellants caused the prosecutor to be deposed in the civil case, and the fact that the deposition pertained to a separate case than the one at bar, the court acted well within its discretion in overruling the appellants' motion to disqualify.

These assignments of error are overruled.

Ann Waiwood's sixteenth and Michael Waiwood's seventeenth assignments of error are:

"The trial court erred in overruling defendants' motion for a new trial."

The appellants attached to the motion for a new trial the deposition of Officer Laura Miller. In her deposition, Miller testified that she and Bentley had stood in front of the Waiwood house for a few minutes, but she didn't know for how long. The appellants claimed in their motion that this deposition testimony showed that she had perjured herself when she had testified at trial that she and Officer Bentley had stood in front of the Waiwood residence for thirty minutes. The appellants also argued that this deposition testimony showed that the prosecutor had acted improperly by suborning perjury. The trial court overruled the appellants' motion for a new trial, and the appellant now argues that because of Officer Miller's deposition testimony, the trial court should have granted their motion.

It is axiomatic that the credibility of a witness is primarily for the trier of facts. *DeHass, supra,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The record reflects that Miller's deposition was taken prior to trial. Accordingly, the appellants could have impeached Miller at trial with her deposition testimony. Yet, the appellants did not do this. In addition, there was substantial corroborative evidence in support of Miller's trial testimony on this issue, and the videotape conclusively showed that Michael Waiwood committed the misdemeanors of assault and resisting his own arrest. Finally, the length of time spent by the police in front of the Waiwood residence was only a minor detail among the facts of this case. In consideration of these facts, it is our opinion that the trial court acted reasonably in rejecting the appellants' allegations about perjury and prosecutorial misconduct. The court, therefore, did not abuse its discretion in overruling the appellants' motion for a new trial.

These assignments of error are overruled.

The judgment is affirmed in part and reversed in part. Appellants' convictions for resisting Ann Waiwood's arrest are vacated, and final judgment is hereby entered in their favor on those charges.

*Judgment accordingly.*

MATIA, P.J., and NAHRA, J., concur.