OPINION
Dennis Peer appeals from his conviction and sentence in the Montgomery County Common Pleas Court on two counts of assaulting a peace officer in violation of R.C. 2903.13(A). In his sole assignment of error, Peer argues that his conviction is against the manifest weight of the evidence.
When evaluating a manifest-weight claim, an appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. A verdict should be overturned as against the manifest weight of the evidence only in extraordinary situations when the evidence weighs heavily against conviction. Id.
After reviewing the record in this case, we cannot say that the evidence weighs heavily against Peer's conviction. The record reflects that Peer worked as a surgical scrub technician at Miami Valley Hospital. On October 6, 2000, manager Carol Thomas called Peer into her office to counsel him about an incident that had occurred the previous day. Thomas testified that Peer "became very angry and he was yelling and screaming. . . ." According to Thomas, Peer also began hitting himself in the face with his fists and saying: "I'll show you. You want my life, I'll show you my life. I'll go home, khew! And I'll blow my brains out!" Peer then left the office, and Thomas called hospital security because she feared that he "would be a threat to himself or to an employee." The specific purpose of the call was to have a fitness-for-duty examination performed on Peer. Thomas testified that a fitness-for-duty examination is performed at Miami Valley Hospital if an employee poses a possible threat to himself or to another employee. She believed that Peer posed such a threat based on his actions in her office and her prior knowledge of his personal life.
Before security responded to Thomas' call, Peer returned to her office. According to Thomas, he was still very angry. At one point, he threw his hospital identification on her desk and said: "Just take my job. I don't want to work here anymore. That's it. I'm through." While Peer was in the office, security officers Joseph Rhodus and John Kiser arrived. Thomas told Peer that she was concerned because he had threatened to take his life and that the officers would escort him downstairs for a fitness-for-duty evaluation. According to Thomas and the officers, Peer refused to submit to an examination and began hitting himself again. Rhodus and Kiser testified that they then told him he could either go downstairs for the examination or be arrested for disorderly conduct.
When Peer continued to refuse the examination, Rhodus instructed him to face the wall and to put his hands on the wall. According to both officers and Thomas, Peer initially complied but then turned around and struck Kiser in the face with his fist and hit Rhodus twice in the chest, knocking the officer backward into a door knob. The two officers testified that they wrestled with Peer and succeeded in handcuffing him only after using pepper spray. As a result of the altercation, Rhodus and Kiser received minor injuries such as cuts and bruises.
Although Peer's trial testimony was consistent with some of the foregoing testimony, he denied ever striking the two officers. According to Peer, one of the officers grabbed his arm, and the other officer used a whole can of pepper spray on his face. The officers then allegedly shoved him against a wall, and one of them began choking him with a forearm. At that point, Peer testified that the officers pushed him into a hallway and instructed him to place his hands on the wall. According to Peer, he complied and never struck Rhodus or Kiser.
On appeal, Peer argues that the testimony of Thomas, Rhodus and Kiser defies credibility. In particular, he contends that he could not have been punching himself in the face or head, as the state's witnesses testified, because the record reflects that he did not knock off his glasses and did not sustain any visible injury. In light of the alleged fabrication by the state's witnesses about Peer hitting himself, he argues that their subsequent testimony about him striking Rhodus and Kiser was not credible.
Upon review, we find this argument to be unpersuasive. Notably, Thomas' testimony suggested that Peer was striking himself lower on his cheekbone, below his glasses. Although Peer reasons that his alleged blows to his head necessarily would have knocked his glasses from his face, the jury reasonably could have found otherwise based on Thomas' testimony. Likewise, the absence of any immediately apparent injury to Peer, as a result of his blows to his head, does not disprove the testimony of the state's three witnesses. In short, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that in resolving conflicts in the evidence the jury clearly lost its way and created a manifest miscarriage of justice. As a result, Peer's conviction is not against the manifest weight of the evidence.
In a final argument raised in connection with his assignment of error, Peer suggests that Rhodus and Kiser had no right to detain him because he had given Thomas his identification and had resigned. According to Thomas, the two officers could not lawfully demand a fitness-for-duty examination given that he was no longer an employee when they arrived to escort him downstairs. Therefore, even if he did assault the two officers, Peer contends that punching them constituted the use of reasonable force to prevent an illegal detention.
As an initial matter, it is not clear that Peer ever raised the foregoing argument before the trial court. In any event, the state properly notes that Peer was subject to arrest for disorderly conduct, as the officers explained at the time of his arrest, regardless of whether he had resigned. City of Cleveland v. Murad (1992), 84 Ohio App.3d 317,320 ("A warrantless arrest for a misdemeanor is valid if the arresting officer is able to reasonably conclude from the surrounding circumstances that an offense has been committed."). In addition, assuming, purely arguendo, that the officers unlawfully arrested Peer, we note that a lawful arrest is not an element of the crime for which he was convicted.State v. Rhinehart (1983), 12 Ohio App.3d 156, 158. Finally, even assuming an unlawful arrest, Peer was not permitted to assault Rhodus and Kiser in any way unless they used excessive force against him. See, e.g., Columbus v. Fraley (1975), 41 Ohio St.2d 173. In the present case, the state's testimony established that the two officers exerted force against Peer only after he punched them. As a result, we find Peer's final argument to be without merit.
Based on the reasoning and citation of authority set forth above, Peer's sole assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.
WOLFF, P.J., and FAIN, J., concur.