OPINION
{¶ 1} Appellant, Daniel L. Gilliam, appeals from the November 5, 2002 judgment entry of the Trumbull County Court of Common Pleas, in which he was sentenced for assault on a peace officer.
 {¶ 2} On March 19, 2002, appellant was indicted by the Trumbull County Grand Jury on two counts of assault on a peace officer, felonies of the fourth degree, in violation of R.C.2903.13(A) and (C)(3). Appellant entered a not guilty plea at his arraignment on March 26, 2002.
 {¶ 3} A jury trial commenced on September 23, 2002. On September 25, 2002, the jury returned a verdict of guilty on both counts.
 {¶ 4} The facts at trial revealed the following: on December 29, 2001, at approximately 11:00 p.m., Lee ("Lee") and Edna ("Edna") Gilliam were on their way from North Lima, Ohio to pick up their nineteen-year-old son, appellant, from Jessica DeWitt's ("DeWitt") house, located at 1037 Layer Road, in Leavittsburg, Ohio. According to Lee, who testified for appellant at trial, he was the driver, and Edna was the passenger on the night at issue. Lee stated that because he was in an unfamiliar area, he was driving very slowly and pulled into the driveway of the Warren Township dump ("dump") on Burnett Road to gather his sense of direction. Lee and Edna eventually found DeWitt's residence and pulled into her driveway.
 {¶ 5} Patrolman Gary Brown ("Patrolman Brown"), a part-time patrolman with the Warren Township Police Department ("WTPD"), testified for the state that he was dressed in full uniform and drove a marked cruiser on the night of the incident. According to Patrolman Brown, he noticed Lee and Edna's van pull into the dump. Patrolman Brown stated that their van then pulled out of the dump at such a slow speed that another vehicle had to pass it. Patrolman Brown said that this caused him to become suspicious due to the occurrence of various thefts in that neighborhood. Patrolman Brown, who was directly behind Lee and Edna's van, observed the van "stop and go, stop and go," and turn its turn signal on and off. Patrolman Brown indicated that the van eventually turned into DeWitt's driveway without signaling. Therefore, Patrolman Brown testified that he activated the cruiser's overhead lights and pulled into DeWitt's driveway. After determining that Lee and Edna had difficulty in finding an address, Patrolman Brown stated that he was about to give Lee a verbal warning.
 {¶ 6} At that time, Patrolman Brown testified that appellant stormed out of DeWitt's residence pointing and yelling at Edna, "Are you happy now you fucking bitch?" According to Edna, DeWitt had made $1,000 worth of collect calls to the Gilliam's phone, which appellant accepted the charges over a four-month period. Both Lee and Edna expected appellant to reimburse them for these calls. Also, Edna stated that she had a disagreement with appellant concerning whether he should propose marriage to DeWitt, who was raped by her ex-boyfriend and who appellant claimed to be pregnant. However, DeWitt testified that she was not pregnant on the night at issue nor had she ever been.
 {¶ 7} According to Patrolman Brown, he believed that this was going to escalate to a violent situation, so he confronted appellant and stated, "`calm down. What is the problem? We can discuss it.'" Patrolman Brown said that appellant replied, "`We don't fucking need you here, so fucking leave.'" Patrolman Brown indicated that appellant shoved him on his left shoulder. Patrolman Brown stated that he tried to grab him but appellant shoved him again. At that point, Patrolman Brown announced that appellant was under arrest. Patrolman Brown testified that appellant proceeded into Lee and Edna's van and closed the door.
 {¶ 8} After Patrolman Brown called for back up assistance, he opened the van door. Patrolman Brown stated that appellant began kicking him in his stomach. Patrolman Brown grabbed and pulled appellant from the van. Patrolman Brown and appellant rolled around on the ground, and appellant then got on top of and was kicking him. Patrolman Brown was able to get away and called for back up assistance again. Patrolman Brown advised appellant that if he did not stop resisting, he would use pepper spray. Patrolman Brown stated that appellant replied, "`fuck you[.]'" Patrolman Brown said that he sprayed appellant twice and appellant retreated back into the van.
 {¶ 9} Patrolman Anthony Tvaroch ("Patrolman Tvaroch"), a patrolman with the WTPD, testified for the state that he was on duty on the night of December 29, 2001, and responded to Patrolman Brown's code ten assistance. Patrolman Tvaroch stated that he was wearing a police uniform and badge, as well as was driving a marked police cruiser when he arrived at the scene. Patrolman Tvaroch observed appellant, who was halfway inside the van, kicking Patrolman Brown. Patrolman Tvaroch proceeded to assist Patrolman Brown, and appellant kicked Patrolman Tvaroch in the chest.
 {¶ 10} Patrolman Robert Santee ("Patrolman Santee"), also with the WTPD, was the third officer to arrive at the scene. According to Patrolman Santee, appellant was erratically kicking his legs at both Patrolman Brown and Patrolman Tvaroch. Patrolman Santee stated that appellant started kicking him as well, so he struck appellant with a collapsible baton on his thigh. The three officers were then able to remove appellant from the van. Patrolman Santee further indicated that Edna became involved in the struggle, and was knocked to the ground. Patrolman Santee said that appellant grabbed Edna's cane, began flailing it about, and continued to kick the officers. Patrolman Santee then struck appellant again with the baton.
 {¶ 11} A fourth officer with the WTPD, Patrolman Daniel Peterson ("Patrolman Peterson"), next arrived at the scene. According to Patrolman Santee, Patrolman Peterson tried to calm appellant down by stating, "`Calm down, you are under arrest, there are four officers here. You need to stop resisting.'" Patrolman Santee stated that appellant replied, "`fuck you, I'm not stopping.'" Appellant was then handcuffed and taken to the WTPD.
 {¶ 12} Appellant testified that when he walked out of DeWitt's house, he heard a siren and saw what appeared to be a police cruiser parked behind his parents' van. Appellant admitted to having a hot temper and to yelling obscenities because he thought that Edna had called the police on him. Appellant stated that Patrolman Brown pulled out his night stick and started beating him as well as maced him. Appellant testified that he did not resist. Appellant indicated that he was later trying to defend himself by using basic tae kwon do moves that his sister had taught him when he was told that he was under arrest and pulled out of the van. Appellant said that there were seven officers at one point beating him, and a total of nine officers at the scene. According to appellant, he is six feet tall and weighed two hundred and eight pounds at the time of the incident.
 {¶ 13} Pursuant to the November 5, 2002 judgment entry, the trial court sentenced appellant to three years of community control plus costs. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 14} "[Appellant's] convictions are against the manifest weight of the evidence."
 {¶ 15} In his sole assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. Appellant contends that Patrolman Brown had no business being present at the scene and unnecessarily interfered in a family affair. Appellant alleges that Patrolman Brown overacted by using physical force, therefore, he had a right to kick and protect himself. Also, appellant stresses that the prosecutor's closing arguments may have misled the jury.
 {¶ 16} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 17} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 18} "* * *
 {¶ 19} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 20} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 21} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 22} In the case at bar, Patrolman Brown testified that he observed Lee and Edna's van pull into the dump, then pull out at such a slow speed that another vehicle had to pass it. According to Patrolman Brown, he became suspicious due to the various thefts which had occurred in that neighborhood. Also, Patrolman Brown observed the van "stop and go, stop and go," turn its turn signal on and off, then eventually turn into DeWitt's driveway without signaling. Thus, Patrolman Brown's suspicion of criminal activity as well as Lee's traffic violation justified the stop. See Mentor v. Johnson (Nov. 9, 2001), 11th Dist. No. 2001-L-002, 2001 Ohio App. LEXIS 5055, at 5.
 {¶ 23} The jury also heard the testimony of Patrolman Brown who said that he was dressed in full uniform and drove a marked cruiser on the night of the incident. Even appellant stated at trial that when he walked out of DeWitt's residence, he heard a siren and saw what appeared to be a police cruiser in the driveway. In addition, Patrolman Tvaroch testified that he was wearing a police uniform and badge as well as was driving a marked cruiser when he was dispatched. As such, appellant knew or had good reason to believe that both Patrolman Brown and Patrolman Tvaroch were authorized police officers. See State v.Whetro (Sept. 4, 1998), 11th Dist. No. 97-A-0020, 1998 Ohio App. LEXIS 4167, at 17, citing Columbus v. Fraley (1975),41 Ohio St.2d 173, paragraph three of the syllabus.
 {¶ 24} The evidence revealed that appellant bolted from DeWitt's house in a rage and was shouting obscenities. Appellant also admitted this at trial. Because Patrolman Brown reasonably believed that the matter was going to escalate into a violent situation, he tried to verbally calm appellant down. However, according to Patrolman Brown, appellant shouted obscenities at him and shoved him twice. At that time, Patrolman Brown announced that appellant was under arrest. Nevertheless, appellant proceeded into the van and shut the door. Patrolman Brown testified that after he opened the van door, appellant began kicking him in his stomach, and a wrestling match ensued. Patrolman Tvaroch stated that appellant later kicked him in the chest. Patrolman Santee, the third officer dispatched, witnessed and testified with respect to appellant's resisting arrest. Thus, based on the foregoing, we do not believe that the officers used excessive force in their efforts to subdue appellant. Appellant's contention that he was defending himself because he was wrongly beaten and not under arrest is not supported by the evidence.
 {¶ 25} Appellant also alleges that the prosecutor's closing arguments may have misled the jury. Appellant complains that the prosecutor wrongly told the jury that the assault on Patrolman Brown took place when appellant told him, "so fucking leave."
 {¶ 26} The record reflects that appellant's counsel did not object to the remarks made by the prosecutor in his closing argument. The prosecutor specifically stated:
 {¶ 27} "[Patrolman] Brown walked around to the passenger side of the van to head off [appellant] and asked him to calm down. And at that point [appellant] who was what, six-foot tall, over 200 pounds, very angry, retorted, `We don't fucking need you here so fucking leave.' And at that point [appellant] shoved [Patrolman Brown], pushed him back with his hand on his shoulder.
 {¶ 28} "And at that point [Patrolman Brown] grabbed [appellant] by the arm and told him he was under arrest. Because what had [appellant] done? He assaulted the officer. * * *"
 {¶ 29} Based on the evidence presented at trial, the prosecutor did not commit plain error during his closing argument. The prosecutor merely made reference to Patrolman Brown's testimony, which we do not believe misled the jury in any manner. Therefore, pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant.
 {¶ 30} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Rice, J., concurs, Christley, J., concurs in judgment only.