JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Raymont Ogletree, appeals from the judgment of the common pleas court, rendered after a bench trial, finding him guilty of assault on a police officer, a fourth degree felony, and sentencing him to five years of community control sanctions. Ogletree contends that his conviction was against the manifest weight of the evidence. He argues further that his conviction should be vacated because the underlying arrest which led to the assault was illegal and, therefore, he lawfully resisted arrest. For the reasons that follow, we affirm Ogletree's conviction but direct the trial court to correct its journal entry finding Ogletree guilty of felonious assault to reflect that Ogeltree was found guilty of a fourth degree felony. In addition, we vacate his sentence and remand for resentencing.
 {¶ 2} In October 2004, Ogletree was charged with four counts of assault on a police officer in violation of R.C. 2903.13. Each count charged Ogletree as follows:
 {¶ 3} "* * * the Defendant unlawfully knowingly caused or attempted to cause physical harm to [name of police officer], a peace officer[,] while in the performance of his official duties."
 {¶ 4} The charges stemmed from Ogletree's arrest on September 21, 2004. Cleveland police officer Stephen Havranek testified at trial that at approximately 9:00 p.m. on September 21, 2004, as he and his partner, Colim Riley, were patrolling in their zone car, they observed a large crowd of people in the intersection of West 73rd Street and Colgate Avenue who were fighting and screaming at each other. Havranek and Riley stopped their car, got out, and tried to get the group separated and calmed down. Because the crowd was large and agitated, the officers called for assistance. Eventually, the crowd separated, one group to the northwest corner of the intersection and the other to the southeast corner.
 {¶ 5} Havranek testified that as he and Riley were separating the crowd, a young woman named Tiffany Allen approached him and told him that Ogletree had punched her in the face. Shortly after that, Tiffany's sister, Christina Allen, approached the officers and told them that Ogletree had also punched her. Havranek and Riley went over to Ogletree and asked him to come to the zone car with them, but he refused. During this conversation, the fight erupted again, so the officers left Ogletree and again attempted to get control of the crowd.
 {¶ 6} Shortly thereafter, three other zone cars arrived on the scene. Sergeant Martin Stanton testified that after conferring with Officer Riley, he learned that two females had complained of assault by Ogletree. Stanton then spoke with the females and determined that they wanted to press charges against Ogletree. Stanton then told Officers Havranek and Riley to issue a misdemeanor complaint statement to the victims.
 {¶ 7} After the forms were completed and signed, Stanton, Havranek, Riley and Officer Thomas Rauscher, who had also responded to the scene, approached Ogletree, who was sitting on the steps of an apartment at the northwest corner of West 73rd Street and Colgate. Approximately 10 to 12 other people were standing or milling around the steps.
 {¶ 8} Officer Riley testified that when he told Ogletree to come with them, Ogletree asked "what for?" and did not get up from the steps. Riley then told him that he was under arrest for assaulting two females. After a minute or so, Ogletree got up and began walking with the officers to the zone car. Riley took Ogletree's right arm and Rauscher took his left arm. Riley testified that after taking several steps, Ogletree told the officers, "get off of me," and began swinging at them "in a circle."
 {¶ 9} Havranek testified that he, Riley, and Rauscher stepped back so they were not hit, but Ogletree struck Sergeant Stanton in his face. Officer Rauscher, who testified that Ogletree was "out of control," then struck Ogletree on his left shoulder with his flashlight. Officer Riley jumped on Ogletree's back, but could not bring him down, so Rauscher, Havranek and Stanton jumped on Ogletree and finally pulled him to the ground.
 {¶ 10} According to Sergeant Stanton, Ogletree refused to put his hands behind his back and continued to swing and kick at the officers as he was on the ground. Officer Riley testified that he asked Ogletree, "what do you want, some pepper spray?" and, when Ogletree continued to struggle, he sprayed him.
 {¶ 11} Ogletree, who had no prior criminal record, testified for the defense that he lived with his grandmother on West 73rd Street. On September 21, 2004, Ogletree's friend, Igor Fae, came over to the house at approximately 4:00 p.m. Several hours later, as Ogletree, Fae, and Ogletree's sister, Tamisha Mitchell, were sitting outside on the porch, they saw a pop can come through the air and land near Tiffany Allen, who was walking on the other side of the street. When Allen yelled, "which one of y'all bitches threw that can at me," Ogletree's sister yelled back at her. Allen and Mitchell approached each other and soon began fighting in the street.
 {¶ 12} Ogletree testified that he tried to break up the fight, but someone maced him and Tamisha. After Ogletree went back to the porch, his cousin, Darlene Ogletree, came out of the house and started fighting with Allen. Ogletree testified that he tried to break up this fight, but was maced again, so he stumbled back to the porch. He denied hitting either Tiffany Allen or Christina Allen.
 {¶ 13} According to Ogletree, as he was sitting on the porch, the police approached and told him that he was under arrest. Ogletree asked them why, because he believed he had only been trying to break up a fight. The police left, but came back a short time later and again told him that he was under arrest. Ogletree testified that one of the police officers then told his grandmother, who was trying to give him some water for his eyes, to "shut the f___ up and get in the house." Ogletree stood up and asked the officer why he was talking to his grandmother that way.
 {¶ 14} Ogletree testified that as he turned to talk to one of the officers, the officer who was behind him shoved him three times. Ogletree turned around and one of the officers hit him in his eye. Then, an officer hit him on his head with a flashlight and another officer jumped on his back.
 {¶ 15} Ogletree admitted that he "wiggled around" to get this officer off his back. He testified that after he got the officer off his back, he began moving his hands around "in circles" to keep the police away from him, although he denied hitting anyone. According to Ogletree, the four officers "bum-rushed" him, took him down, and handcuffed him. One of the officers then told him, "here go some real shit for you," and pepper-sprayed him.
 {¶ 16} Ogletree testified that, as a result of the incident, he had a bump on his head for one week and his shoulder hurt for nearly one month.
 {¶ 17} Igor Fae testified for the defense that he went to Ogletree's house on West 73rd Street at approximately 4:00 p.m. on September 21, 2004. He, Ogletree, and Ogletree's sister were sitting outside when Fae saw a pop can come through the air towards a young woman who was walking across the street. The woman yelled at Ogletree and the others and soon she and Ogletree's sister began fighting in the middle of the street.
 {¶ 18} Fae testified that when the fight was over, Ogletree's cousin, Darlene, came out of the house and questioned Allen, who was 19 years old, why she would fight Ogletree's sister, who was 14 years old. Darlene and Allen began fighting and soon, about 20 people who appeared to know Allen came out of their houses and "started trying to get into the rumble" to beat up Darlene.
 {¶ 19} According to Fae, as Ogletree's group tried to stop the fight, one of Tiffany Allen's friends took out a can of mace and sprayed everyone, including Ogletree. Fae saw Ogletree go back to his grandmother's porch. Ogletree's grandmother then came out on the porch with wet rags for everyone who had been maced.
 {¶ 20} Fae was about five feet away from the porch when the police approached Ogletree. He heard one of the officers tell Ogletree to "just get the fuck up" when he asked why he was being arrested. He also heard one of the police officers tell Ogletree's grandmother to "shut up" when she asked why he was being arrested. Fae testified that the officers started shoving Ogletree immediately when he stood up and he heard Ogletree tell them not to shove him. An officer then jumped on Ogletree's back and Ogletree started flailing his arms. All of the officers then jumped on Ogletree and pulled him to the ground. Fae then heard a police officer tell Ogletree, "I got something else for your fat ass," and saw the officer pepper-spray him.
 {¶ 21} The trial judge found Ogletree guilty of one count of assault on Sergeant Stanton, as charged in the indictment, but not guilty of the remaining charges, and sentenced him to five years of community control sanctions.
 {¶ 22} In his first assignment of error, Ogletree argues that his conviction was against the manifest weight of the evidence.
 {¶ 23} A manifest weight challenge questions whether the State has met its burden of persuasion at trial. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, the reviewing court sits, essentially, as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Id. at 387. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of the witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, supra at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.Martin, supra.
 {¶ 24} Ogletree argues that in considering the evidence, all reasonable inferences therefrom, and the credibility of the witnesses, the trial judge lost his way and created a manifest miscarriage of justice in finding him guilty of assaulting Sergeant Stanton.
 {¶ 25} Specifically, Ogletree complains of "credibility problems" with the police officers' testimony. He notes that the State offered no witnesses other than the four police officers, even though there were numerous individuals at the scene who observed Ogletree's arrest and could have given an independent account of what happened. He notes further that Sergeant Stanton testified that his chest hurt for one week after Ogletree hit him, even though Stanton admitted that he was wearing a bulletproof vest. Further, Ogletree argues that Officer Rauscher's testimony that this was "one of the worst offenses on police officers" that he had ever seen simply "defies logic," in that none of the police officers sought medical attention for their alleged injuries and the only observable injury was a scrape on Sergeant Stanton's face, even though at the time of the incident, Ogletree was 6'2" tall and weighed 280 pounds. Ogletree also argues that it "defies logic" that he would have yelled "get off of me" if no one was on him. Therefore, he contends, Officer Riley must have jumped on his back, as he testified, before he started yelling and struggling with the officers.
 {¶ 26} Ogletree also argues that the police officers' testimony about what happened is suspect because he was never prosecuted for the alleged underlying assault on the Allen sisters. In fact, the officers admitted that they did not interview any witnesses about the alleged assault on the women and further admitted that they did not observe any marks that would indicate assault on either of the women.
 {¶ 27} Finally, Ogletree contends that the officers' testimony is suspect because Officer Riley did not state in the narrative portion of the police report regarding the incident that the Allen sisters completed and signed the misdemeanor complaint forms before Ogletree was arrested. Although Riley included such a statement in a footnote to the report, Ogletree contends that this omission indicates that there was no basis for his arrest and the officers' testimony is not credible. Further, Ogletree notes that his name appears to have been written on the complaint forms after his arrest, when the police learned his name.
 {¶ 28} Our review of the record indicates that defense counsel extensively cross-examined each of the police officers regarding the events that led to the assault charges. The officers' alleged "credibility problems" were brought out by defense counsel during trial and the judge had the opportunity to assess the officers' credibility. Because the credibility of the testimony and the weight of the evidence are primarily matters for the trier of fact, State v. DeHass (1967),10 Ohio St.2d 230, it was within the judge's discretion to determine whether the State's witnesses or those of the defense were to be believed. Id.
 {¶ 29} After reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses, we are not persuaded that the judge lost his way and created such a miscarriage of justice that Ogletree's conviction must be reversed.
 {¶ 30} Appellant's first assignment of error is overruled.
 {¶ 31} In his second assignment of error, Ogletree argues that the misdemeanor complaint forms were not completed prior to his arrest and, therefore, the arrest was unlawful and his actions in resisting an unlawful arrest were justified. We disagree.
 {¶ 32} R.C. 2935.03(B)(1) states:
 {¶ 33} "When there is reasonable ground to believe that an offense of violence * * * has been committed within the limits of the political subdivision, * * * a peace officer * * * may arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe is guilty of the violation." An "offense of violence" includes assault. R.C.2901.01(A)(9)(a).
 {¶ 34} The testimony at trial indicated that both Tiffany Allen and Christina Allen advised the police that Ogletree had assaulted them. Further, they both identified Ogletree on the scene and signed statements regarding the assault on them. Accordingly, the officers had "reasonable ground" to believe that Ogletree had committed an offense of violence.
 {¶ 35} Ogletree's argument that the officers did not know his name and did not write his name on the complaint forms completed by the Allen sisters until after his arrest does not negate the validity of his arrest. As R.C. 2935.03(B)(1) makes clear, no warrant was necessary. Moreover, the evidence at trial indicated that the Allen sisters identified Ogletree as their assailant to the police officers at the scene. Accordingly, the fact that the officers may not have known Ogletree's name before his arrest does not demonstrate that the arrest was not valid.
 {¶ 36} Finally, it is well-established that:
 {¶ 37} "In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." Columbus v. Fraley (1975), 41 Ohio St.2d 173, paragraph three of the syllabus.
 {¶ 38} Appellant's second assignment of error is overruled.
 {¶ 39} We reverse Ogletree's sentence, however, and remand for resentencing because the record is inconsistent with respect to whether the trial court considered the offense to be a third or fourth degree felony.
 {¶ 40} The indictment charged Ogletree with four counts of assault on a police officer in violation of R.C. 2903.13. As provided in R.C. 2903.13(C)(3), assault on a police officer is a felony of the fourth degree:
 {¶ 41} "If the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree."
 {¶ 42} The record reflects that when the trial judge announced his verdict, he stated, "I find beyond a reasonable doubt that the state has proved count one of the indictment, which involves Sergeant Martin Stanton and his being struck in the chest and face. I find the state did not prove counts two, three and four." Thus the judge found Ogletree guilty of a fourth degree felony, as charged.
 {¶ 43} The journal entry of conviction in this case, however, states that "the court finds the defendant guilty of assault/2903.13 — F3 as charged in count(s) 1 of the indictment."[1] Likewise, the sentencing entry states, "on a former day of court the court returned a verdict of guilty of assault/2903.13 — F3 as charged in count(s) 1 of the indictment."
 {¶ 44} Count one of the indictment charged Ogletree with assault on a police officer, a fourth degree felony. Accordingly, that part of the journal entries stating that the offense is an "F3" is inconsistent with the trial judge's finding that Ogletree was guilty of one count of assault on a police officer "as charged in count(s) 1 of the indictment."
 {¶ 45} In light of this inconsistency, we vacate Ogletree's sentence and remand for resentencing on a fourth degree felony. We further direct the trial court to correct the journal entry of conviction to reflect that Ogletree was convicted of a fourth degree felony.
Conviction affirmed; sentence vacated.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Blackmon, J., concur.
[1] "F3" is a common abbreviation for third degree felony.