[Cite as *State v. Williams*, 2026-Ohio-2363.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 25CA012263 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| HOSIE WILLIAMS | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 22CR107536 |

DECISION AND JOURNAL ENTRY

Dated: June 22, 2026

STEVENSON, Judge.

{¶1} Defendant-Appellant Hosie Williams appeals the judgment of the Lorain County Court of Common Pleas claiming he was denied effective assistance of counsel as his counsel failed to file a notice of self-defense pursuant to Crim.R. 12.2. For the following reasons, this Court affirms.

I.

{¶2} Mr. Williams was indicted in October 2022 with one count of felonious assault in violation of R.C. 2903.11(A)(1)/(D)(1)(a), a second degree felony, with a repeat violent offender specification pursuant to R.C. 2941.149(A), and one count of assault in violation of R.C. 2903.13(A)/(C)(3), a felony of the third degree. The alleged assault occurred at the Lorain Correctional Institution, a state correctional facility. It was alleged that Mr. Williams, an inmate, assaulted D.S., a corrections officer at the facility.

{¶3}    Mr. Williams pleaded not guilty to the charges and counsel was appointed. Mr. Williams was on his fifth appointed attorney when trial commenced. Prior attorneys had either requested to withdraw due to alleged breakdowns in the attorney-client relationship or were removed at Mr. Williams' request. Mr. Williams sought to represent himself pro se prior to trial but decided that self-representation was not feasible and counsel was reappointed. The case was also delayed while a competency evaluation of Mr. Williams was completed. The court found Mr. Williams competent to stand trial after a hearing on the matter. Trial commenced in March 2025.

{¶4}    D.S. testified at trial that he was working in block 8-A of the correctional facility on September 14, 2022, when Mr. Williams came up to his desk and asked to go the facility's medical unit because "he was peeing and pooping blood." D.S. testified that he called the medical unit and was told that the unit was at capacity and "the soonest they could get [Mr. Williams] in" was "early [the next] morning." According to D.S., "when I told [Mr. Williams] he'd have to wait until the next morning, . . . it was like a light switch flipped, and he just went off."

{¶5}    Mr. Williams slammed a table on the floor and threw a second table at the guard station. D.S. testified that there were "like 120 incarcerated guys out of their cells" at the time and that he wanted to get Mr. Williams under control. D.S. went around his desk and told Mr. Williams to "cuff up" which inmates know means to "[p]ut your hands behind your back so that I can put the handcuffs on."

{¶6}    D.S. testified that Mr. Williams did not "cuff up" and that he started yelling and swinging his fists at D.S. D.S. "dodg[ed] out of the way" to avoid getting hit by Mr. Williams. D.S. testified that he tried to take control of the situation but Mr. Williams "lunged into me like a football player, . . . lifting me high up into the air" and lifting his "legs . . . off the ground[.]" Mr. Williams then slammed D.S. on the concrete floor and punched the corrections officer. D.S.

believes that he "lost consciousness for just a moment." D.S. does not know "how many times [Mr. Williams] had hit [him]" but he knows that he felt a punch. D.S. was able to put Mr. Williams in handcuffs after the incident. The incident was captured on D.S.'s body camera, another correctional officer's body camera that was working in the same unit, and a facility surveillance camera. The videos were shown at trial and admitted into evidence.

{¶7} Mr. Williams testified in his defense at trial. He testified that he had been to the medical unit before September 14, 2022, when he swallowed a razor blade. He testified that he "got scared" on the day of the incident because he saw blood in the urinal and toilet when using the restroom. Mr. Williams acknowledged that he became agitated and "lost it" after going to the correction officers' desk and asking to go to the medical unit. He testified that he lost it because he did not think the officers were taking him seriously. He was also frustrated because he believed that he had already served his time at the facility.

{¶8} Mr. Williams acknowledged that he "slammed" one table and "toss[ed]" a second table. He claimed that he did this because he felt the correction officers were "not listening to what's going on with me[.]" He testified that he did not hear D.S. telling him to "cuff up" and that he became defensive when he saw D.S.'s "hands come up." Mr. Williams testified that he tried to get away from D.S. and that, when that didn't work, the two became involved in a tussle and he took D.S. down to the ground. According to Mr. Williams, he "blacked out" and did not know "what's going on." He claimed that he "fear[ed] for [his] life" and that he only wanted to get to the medical unit.

{¶9} Mr. Williams was found guilty of the offenses on which he was charged. The trial court merged the assault (Count 2) conviction with the felonious assault (Count 1) conviction and sentenced Mr. Williams to a mandatory minimum of eight years to a maximum of 12 years in

prison. It sentenced Mr. Williams to three years on the repeat violent offender specification, ordering time to be served consecutive to the sentence imposed on Count 1 for a total aggregate sentence of mandatory 11 years minimum to a maximum of 15 years in prison. The trial court informed Mr. Williams of post release control supervision and appellate rights and it waived court costs and financial sanctions. Mr. Williams appeals, asserting one assignment of error for this Court's review.

I.

**ASSIGNMENT OF ERROR**

**[MR. WILLIAMS] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHICH MATERIALLY DEPRIVED HIM OF A FAIR TRIAL WHEN[] COUNSEL FAILED TO FILE A NOTICE OF SELF DEFENSE PURSUANT TO CRIMINAL RULE 12.2 DESPITE SELF DEFENSE BEING THE CRUX OF WILLIAMS['] DEFENSE.**

{¶10} Mr. Williams argues in his sole assignment of error that he was denied effective assistance of counsel. He maintains that trial counsel was ineffective and deprived him of a fair trial as he failed to file a notice of self-defense pursuant to Crim.R. 12.2. We disagree.

{¶11} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Williams must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable representation[.]" *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. The Ohio Supreme Court has stated that a court, however,

> must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Williams must show that there existed "a reasonable probability that, but for his counsel's error, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138. Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687.

{¶12} Mr. Williams argues that counsel's performance was deficient because he failed to file a notice of self-defense pursuant to Crim.R. 12.2. He maintains that "there is no rationale for not filing a notice of self-defense, especially when the entirety of [his] strategy was to impart upon the jury that [he] had acted in fear of harm being brought upon by D.S." Mr. Williams contends the jury would have found him not guilty had he been able to assert self-defense at trial. The State argues that Mr. Williams has failed to establish trial counsel was deficient.

{¶13} A review of the record indicates multiple reasons why Mr. Williams' ineffective assistance of counsel argument fails. First, counsel may have rightly believed that Mr. Williams would not succeed on a self-defense claim at trial. Self-defense is an affirmative defense in Ohio. *State v. Messenger*, 2022-Ohio-4562, ¶ 24. "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that [his] use of force was in self-defense." *Id.* at ¶ 25. "Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State 'to prove beyond a reasonable doubt that the accused did not use force in self-defense.'" *State v. Massey*, 2024-Ohio-5542, ¶ 5 (9th Dist.), quoting *State v. Brooks*, 2022-Ohio-2478, ¶ 6.

{¶14} The elements of self-defense are:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

(Bracketed text in original.) *Messenger* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). A defendant satisfies his burden of establishing self-defense when "the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant[.]" *Id.* at ¶ 25.

{¶15}  Mr. Williams does not deny that he "lost it" when D.S. told him the medical unit could not see him on the day of the incident. He does not deny that he "picked . . . up and slammed" a table and that he "toss[ed]" another table. He does not argue how D.S. started the affray by reacting to Mr. Williams' violent outburst. Mr. Williams did not meet his burden to show that his acts were in self-defense as the evidence in this case establishes that Mr. Williams created the situation that led to the assault on the officer.

{¶16}  Further, Mr. Williams was an inmate at the correctional facility at the time of the incident. Under Ohio law, corrections officers in the performance of their duties may lawfully use such force as is reasonable and "necessary . . . to control inmates[.]" Adm.Code 5120-9-01. As this Court has recognized:

> the standard for establishing self defense is heightened when a police officer is the victim. "In the absence of excessive or unnecessary force by [a police] officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances."

*State v. Grace*, 1995 WL 598502, *5 (9th Dist. Oct. 11, 1995), quoting *Columbus v. Fraley* 41 Ohio St.2d 173, paragraph three of the syllabus (1975), certiorari denied, 423 U.S. 872. Mr.

Williams does not argue that the officer used excessive or unnecessary force when engaged in his duties or that he did not know D.S. was an authorized correctional officer. At least one of Mr. Williams' prior counsels appeared to believe did not have a valid self-defense claim. Recognizing that officers may use reasonable force to detain inmates, prior counsel for Mr. Williams had stated at a pretrial hearing that a self-defense claim in this case was "almost a moot legal argument" considering "[o]fficers have a different standard of use of force than a normal person" such that the officer was "allowed to use force against [Mr. Williams]." Counsel may have reasonably determined that Mr. Williams could not meet his burden of establishing self-defense in this case.

{¶17} In light of Mr. Williams' admission that he "lost it" and the law pertaining to an officers' use of force to detain an inmate, trial counsel proceeded with a theory that Mr. Williams did not knowingly cause harm to D.S. rather than assert a self-defense claim. *Messenger* at ¶ 14, quoting *Barnes* at 24. This defense would be consistent with Mr. Williams' testimony that he "blacked out" and did not know what was going on during the assault.

{¶18} Mr. Williams was charged with felonious assault in violation of R.C. 2903.11 and assault in violation of R.C. 2903.13. Both charges require a finding that Mr. Williams acted "knowingly[.]" R.C. 2903.11(A); R.C. 2903.13(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶19} Counsel argued in opening that "[t]he State's going to say that my client acted knowingly in causing injury to a deputy" but, when you "put yourself in the mind of a person who's wrongfully imprisoned long past their time suffering a medical emergency[,] . . . you will see that my client acted out of fear and necessity, and not out of any knowing intent to harm another person." Counsel asked Mr. Williams questions at trial about his state of mind at the time of the

incident, specifically questions relating to his medical condition, his fears associated with that condition, and his fears relating to the inability to obtain immediate medical care. Counsel continued with this theory in closing argument, arguing that Mr. Williams was desperately in need of medical attention and he did not act fully knowing the consequences of his actions. Counsel's trial decision to proceed under a theory that Mr. Williams did not act "knowingly" is a strategic decision that is not be second-guessed by this Court. *State v. Granakis*, 2017-Ohio-8428, ¶ 29 (9th Dist.), quoting *State v. Miller*, 2007-Ohio-370, ¶ 10 (9th Dist.), citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995) ("Strategic trial decisions are left to the deference of the trial counsel and are not to be second-guessed by appellate courts.").

{¶20} Mr. Williams has not demonstrated that trial counsel was deficient for his failure to file a notice of self-defense pursuant to Crim.R. 12.2. Mr. Williams has not satisfied the first prong of *Strickland*. *Strickland*, 466 U.S. at 687. Having determined that trial counsel's performance was not deficient, we need not proceed to an analysis of whether Mr. Williams was prejudiced by a deficiency. Mr. Williams' sole assignment of error is overruled.

III.

{¶21} For the reasons stated above, Mr. Williams' sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOHN KOPASAKIS, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and SPENCER J. LUCKWITZ, Assistant Prosecuting Attorney, for Appellee.