[Cite as *State v. Walker*, 2014-Ohio-3693.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

       Plaintiff-Appellee

-vs-

BENITA LOUISE WALKER

       Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2013 CA 00204

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Canton Municipal Court, Case No. 2013 CRB 03302 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 25, 2014 |


APPEARANCES:

For Plaintiff-Appellee

JOSEPH MARTUCCIO
CANTON LAW DIRECTOR
TASHA FORCHIONE
ASSISTANT CITY PROSECUTOR
218 Cleveland Avenue, SW
P. O. Box 24218
Canton, Ohio 44701-4218

For Defendant-Appellant

KRISTINE W. BEARD
4450 Belden Village Street, NW
Suite 703
Canton, Ohio 44718

*Wise, J.*

{¶1}.    Appellant Benita Louise Walker appeals from her conviction of disorderly conduct and resisting arrest in the Canton Municipal Court, Stark County. The relevant facts leading to this appeal are as follows.

{¶2}.    On the afternoon of August 12, 2013, appellant was at the Stark County Regional Transit Authority (SARTA) bus terminal on Cherry Avenue Southeast in the City of Canton. She was seated in a "pod" area, i.e., a cement island where SARTA patrons wait for their busses. At times, there can be several hundred people utilizing this public transportation facility. *See* Tr. at 105.

{¶3}.    At some point that afternoon, appellant yelled to her boyfriend to "hurry the fuck up." Tr. at 107. A Canton police officer, William Watkins, who was working a security detail at SARTA, approached appellant and asked her to stop using profane language. As further discussed *infra*, appellant instead became belligerent and started berating the officer, continuing to use profane language. Ultimately, appellant was arrested at the scene when she refused to leave.

{¶4}.    On August 13, 2013, appellant was charged with one count of disorderly conduct, R.C. 2917.11(A)(1), a fourth degree misdemeanor, and one count of resisting arrest, R.C. 2921.33(A), a second degree misdemeanor. Appellant subsequently pled not guilty and demanded a trial by jury.

{¶5}.    The matter proceeded to a jury trial on September 24, 2013. The State presented three witnesses and a document containing SARTA's "Courtesy Rules for Passengers." Appellant presented no evidence in her defense.

{¶6}. Appellant made both an oral and written motion for a specific jury instruction on the proper definition for the term "turbulent behavior." The trial court ruled in favor of appellant as to said request.

{¶7}. The jury subsequently found appellant guilty on both counts. The court thereupon sentenced appellant to ninety days in jail for resisting arrest (with eighty-nine days suspended and a one-day credit for time served) and thirty days in jail for disorderly conduct (with twenty-nine days suspended and a one-day credit for time served).

{¶8}. On October 22, 2013, appellant filed a notice of appeal. She herein raises the following three Assignments of Error:

{¶9}. "I. APPELLANT'S CONVICTIONS FOR DISORDERLY CONDUCT AND RESISTING ARREST ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶10}. "II. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON BOTH CHARGED OFFENSES.

{¶11}. "III. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO INSTRUCT THE JURORS THAT THEY HAD TO DETERMINE WHETHER A LAWFUL ARREST HAD OCCURRED FOR DISORDERLY CONDUCT BEFORE FINDING APPELLANT GUILTY OF RESISTING ARREST."

I.

{¶12}. In her First Assignment of Error, appellant contends her convictions for disorderly conduct and resisting arrest are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶13}. In reviewing a claim based on the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶14}. Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

### *Disorderly Conduct*

{¶15}. Appellant was convicted for disorderly conduct under R.C. 2917.11(A)(1), which states as follows:

{¶16}. "No person shall recklessly cause inconvenience, annoyance, or alarm to another by *** [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

{¶17}. An offense of disorderly conduct is elevated to a misdemeanor of the fourth degree if "the offender persists in disorderly conduct after a reasonable warning or request to desist." R.C. 2917.11(E)(3)(a).

**{¶18}.** In the context of Ohio's disorderly conduct statute, the word "turbulent" means, "* * * tumultuous behavior or unruly conduct characterized by violent disturbance or commotion." See *State v. Reeder* (1985), 18 Ohio St.3d 25, 26.

**{¶19}.** According to the trial record, Officer Watkins initially heard appellant's statement of "hurry the fuck up" while doing his rounds of the SARTA terminal and "[took] several steps in that direction" to deal with the matter. See Tr. at 107. This loud statement was also within earshot of other bus patrons. Tr. at 110. Officer Watkins advised appellant that profane language is a violation of the SARTA bus rules and directed her to stop. Tr. at 107. Appellant ignored the officer's warning and responded: "That's my motherfuckin' boyfriend. I can cuss if I want." Tr. at 108. The officer again advised her that she could not use profanity at the bus terminal. Tr. at 108. He further told her that if she continued using profanity, she would have to leave the premises. Appellant replied again: "That's my motherfuckin' boyfriend. I can cuss if I want." Tr. at 108. The officer, after giving appellant further opportunity to correct her behavior, told her she must leave. Officer Watkins told her to leave at least four times. Tr. at 108. Appellant refused to do so, telling the officer "I don't have to leave the property. My boyfriend is in here." Tr. at 108.

**{¶20}.** As a crowd formed, the officer attempted to place appellant under arrest for her conduct. Tr. at 110-111. He asked her to stand up. She refused to do so. Tr. at 111. When he tried to cuff her, she pulled away and twisted and turned in an attempt to keep the officer from arresting her. Tr. at 111, 124. When Officer Watkins finally did get the handcuffs on her, she refused to walk as she was being escorted away from the "pod." Tr. at 113.

{¶21}. Notably, appellant's behavior took place in a crowded bus terminal that services many types and ages of riders. Officer Watkins was asked: "Did this [appellant's speech and behavior] create a crowd or… How did this affect, if at all, the other passengers at the bus stop?" He answered: "They're all watching. They're all watching this behavior." Tr. at 110. Eric Johnson, a bus driver seated within his bus, was loading and unloading passengers at the time of this incident. At trial, Johnson stated "I do remember that there was a woman there that was being loud and that caught my attention." When asked what Johnson heard from her, he answered: "Cussing, swearing. Just very loud talking." Tr. at 122. The SARTA supervisor, Albert Hogan, testified: "And the first thing I heard  * * * it was a lot of cussing * * * I don't know what she was mad at at first but then the attention turned to Officer Watkins and she started cussing at him * * *.  It was pretty belligerent." Tr. at 130.

{¶22}. Although not raised as a separate assigned error, appellant also raises at this juncture the argument that her words were constitutionally protected speech and could not form the basis of a criminal prosecution. In support, appellant directs us to *Cincinnati v. Karlan* (1974), 39 Ohio St. 2d 107, 314 N.E. 2d 162, and *State v. Frazier*, 9th Dist. Summit No. 25338, 2011-Ohio-3189, for the rule that persons may not be punished for speaking boisterous, rude, or insulting words, even with the intent to annoy another, unless the words by their very utterance inflict injury or are likely to provoke the average person to an immediate retaliatory breach of the peace. We note *Karlan* involved a Cincinnati municipal ordinance which read: "It shall be unlawful for any person to wilfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person or the citizens of

the city or any portion thereof." In addition, *Frazier* involved R.C. 2917.11(A)(2), which states: "No person shall recklessly cause inconvenience, annoyance, or alarm to another by *** [m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person."

{¶23}. In essence, appellant urges that her language did not constitute unprotected "fighting words." The case sub judice, however, entails a prosecution under R.C. 2917.11(A)(1). "The Ohio Supreme Court has determined that R.C. 2917.11(A)(1) contains a component which does not concern the prohibition of speech or expression. *** Rather, this section of the Revised Code contains elements prohibiting behavior." *State v. Logue*, 7th Dist. Mahoning No. 97-BA-22, 2000 WL 246485. The basis for the charge against appellant went well beyond her loud and profane language. Appellant was told by a law enforcement officer to leave a public transportation facility after several warnings about her language and behavior. Officer Watkins aptly noted that SARTA users include minors going to and from school, probationers, and persons with mental health issues, summarizing as follows: "*** [T]here's a very diverse group of people at any given time down there and you have to have a police presence to make sure order is kept. If not, things can get real ugly real quick." Tr. at 105-106. The jurors could have rightly concluded that her refusal to leave after the officer told her to, in conjunction with her turbulent behavior and angry responses, caused inconvenience, annoyance, or alarm to others. Her conduct required the attention of three SARTA employees, taking them away from their ordinary duties. The jurors could have properly inferred that it caused a disturbance, a crowd to form, and delayed the loading and unloading of a SARTA bus. The officer's multiple warnings show not only that appellant

acted recklessly in creating the inconvenience, annoyance, or alarm, but also that she acted with persistence, thus elevating the offense to a fourth-degree misdemeanor. As in the case of *State v. Bryan*, 1st Dist. Hamilton No. C-830553, 1984 WL 6816, we find these facts represent a "course of conduct that clearly transcends the exercise of protected speech, and that may properly form the basis of a criminal offense under state law." *Cf.*, also, *State v. Rhines*, 2nd Dist. Montgomery No. 23486, 2010-Ohio-3117, (evidence found sufficient for R.C. 2917.11(A)(1) conviction where defendant at a department store engaged in violent or turbulent behavior by shouting profanities, disrupting a place of business, refusing to leave, and throwing gum at an employee).

{¶24}. Accordingly, upon review, we find no grounds for reversal of the disorderly conduct count on sufficiency grounds, and we hold the jury's decision did not create a manifest miscarriage of justice requiring that appellant's conviction for disorderly conduct be reversed and a new trial ordered.

### *Resisting Arrest*

{¶25}. The statute in question, R.C. 2921.33(A), directs that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Regarding the "lawful arrest" aspect of the statute, the Ohio Supreme Court held in *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 324 N.E.2d 735, " * * * that in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows * * * is an authorized police officer * * * whether or not the arrest is illegal under the circumstances." *Id.* at 180, 324 N.E.2d 735. As later observed by the Court, *Fraley* stands for the proposition that modern Ohio law encourages the "resol[ution of] questions concerning the legality of police conduct in the

courts through peaceful means rather than on the street in potentially violent confrontation." *State v. Pembaur* (1984), 9 Ohio St.3d 136, 138, 459 N.E.2d 217. In order to prove a lawful arrest, the State need not prove that the defendant was, in fact, guilty of the offense. *See State v. Sansalone* (1st Dist. 1991), 71 Ohio App.3d 284, 285, 593 N.E.2d 390. Instead, the State must prove both "that there was a reasonable basis to believe that an offense was committed, [and] that the offense was one for which the defendant could be lawfully arrested." *See State v Vactor,* 9th Dist. Lorain No. 02 CA 8086, 2003-Ohio-7195, ¶ 34 (additional citations omitted).

{¶26}. Based on our above analysis of appellant's disorderly conduct conviction, we conclude the jurors could clearly have determined that Officer Watkins had a reasonable basis to believe a criminal offense under Ohio law had occurred, thus resolving the "lawful arrest" issue. Furthermore, the record reveals that after Officer Watkins placed appellant under arrest, she was uncooperative. The officer stated: "She's not – you know, she won't stand up. She won't leave the property * * *.  I have to help her up. * * * She's still not being compliant. I finally get the cuffs on her.  * * * It took some doing." Tr. at 112. Appellant refused to stand when the officer placed her under arrest, she pulled away when he tried to handcuff her, and she refused to walk when being escorted away from the terminal. Officer Watkins described the arrest of appellant as  "a chore in itself." Tr. at 111. The SARTA supervisor, Albert Hogan, added that during the pre- and post-arrest time, appellant continued to use profanity: "Just F-bombs. I mean, and four letter words. Just a lot of cussing I could say." Tr. at 132. In addition, Eric Johnson, the SARTA bus driver mentioned earlier, testified that appellant

was "pulling away, twisting and turning to get away from the officer," while she was being handcuffed. Tr. at 124.

{¶27}. Upon review of the record, we hold reasonable triers of fact could have found the elements of the crime of resisting arrest under the facts presented at trial. Thus, we find no grounds for reversal of the resisting arrest count on sufficiency grounds, and we hold the jury's decision did not create a manifest miscarriage of justice requiring that appellant's conviction for resisting arrest be reversed and a new trial ordered.

{¶28}. Appellant's First Assignment of Error is overruled.

II.

{¶29}. In her Second Assignment of Error, appellant contends the trial court erred in denying her motions for acquittal as to both offenses in this matter. We disagree.

{¶30}. An appellate court reviews a trial court's denial of a Crim.R. 29 motion for acquittal using the same standard used for reviewing a sufficiency of the evidence claim. *State v. Barron,* 5th Dist. Perry No. 05 CA 4, 2005–Ohio–6108, ¶ 38. Having now reviewed appellant's above "sufficiency" claims, we find further analysis of her present argument to be unnecessary.

{¶31}. Appellant's Second Assignment of Error is therefore overruled.

III.

{¶32}. In her Third Assignment of Error, appellant contends the trial court erred in failing to adequately instruct the jurors to determine whether a lawful arrest had occurred for disorderly conduct before finding appellant guilty of resisting arrest. We disagree.

{¶**33**}. We first note the record indicates that at trial, appellant raised a jury instruction issue regarding the definition of "turbulent behavior," but she did not assert her present challenge that the reading of the instructions on resisting arrest prior to the instructions on disorderly conduct would be misleading to the jury. *See* Tr. at 143-146. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Crim.R. 52(B). In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. *Long, supra,* paragraph two of the syllabus. In *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452, the Ohio Supreme Court applied *Long* and the plain error doctrine in the context of an allegedly erroneous jury instruction. The Court added that " * * * the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *Id.* at 227, 448 N.E.2d 452. Finally, "a single jury instruction should not be judged in isolation but, instead, must be considered in the context of the overall charge." *State v. Schlee*, Lake App.No. 2004–L–070, 2005–Ohio–5117, ¶ 32 (additional citations omitted).

{¶**34**}. In the case sub judice, the jury clearly was not required to find that appellant was in fact guilty of the precipitating charge when considering whether the elements of resisting arrest were met. *See Mansfield v. Studer*, 5th Dist. Richland Nos. 2011–CA–93, 2011–CA–9, 2012-Ohio-4840, ¶ 90. Appellant asserts that the trial court did not adequately instruct the jury that the arrest for disorderly conduct must be found lawful in order to convict for resisting. However, the trial court at least read to the jury the elements of the statute, including the phrase "resist or interfere with a lawful arrest."

*See* Tr. at 162. Upon review, we find no plain error under the circumstances, and we are unpersuaded by appellant's additional speculative theory that the chronological order of the instructions for the offenses of resisting arrest (which was given first) and disorderly conduct (which was given second) caused confusion for the jurors and that the outcome of the case would have been different had these instructions been challenged by defense counsel.

{¶35}. Appellant's Third Assignment of Error is therefore overruled.

{¶36}. For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, J., concurs.

Hoffman, P. J., concurs in part and dissents in part.

JWW/d 0725

*Hoffman, P.J. concurring in part and dissenting in part*

**{¶37}** I concur in the majority's analysis and disposition of Appellant's third assignment of error.

**{¶38}** I also concur in the majority's affirmance of Appellant's conviction for resisting arrest. However, I do so based upon the fact Appellant could have been lawfully arrested for criminal trespass, not disorderly conduct.

**{¶39}** I find Appellant's conviction for disorderly conduct is not supported by sufficient evidence. The majority concludes the basis for the charge against Appellant went well beyond her loud and profane language.[1]

**{¶40}** I interpret the majority opinion to suggest, had Appellant been cited with a violation of R.C. 2917.11 (A)(2), she would have been properly acquitted of that charge. However, the majority correctly focuses its analysis on whether Appellant recklessly caused inconvenience, annoyance, or alarm to another by engaging in violent or turbulent behavior in violation of R.C. 2917.11(A)(1).

**{¶41}** The fact a "crowd"[2] gathered around the commotion to watch is not unusual. But the mere fact a crowd gathered to watch does not equate to Appellant having acted violently or turbulently, let alone support the conclusion others in the "crowd" were caused inconvenience annoyance or alarm thereby. No other bus terminal passenger testified as to the same. In fact, Officer Watkins' initial response to

---

[1] Whether or not the Appellant's repeated profanity was the basis for her arrest is subject to debate. What is not subject to debate is that it was a major precipitating factor leading to her arrest.

[2] While the majority notes at times, there can be several hundred people at the facility, in the same sentence the witness said at times, there can be as little as ten. The witness later testifies he did not know how many people were there, (Tr. at p. 110), let alone conclude the bus terminal was "crowded."

Appellant's retort after first advising her not to use profanities was to "immediately bust out started laughing" Tr. at p.107.

**{¶42}** In its response brief, the state of Ohio claims Appellant's conduct delayed the loading and unloading of a SARTA bus. (Appellee's brief at p. 8). Appellee does not cite a transcript page in support. If true, Appellant's conduct would have caused inconvenience. But I find the record belies such assertion.[3]

**{¶43}** Appellant may well have caused a disturbance, but I find her conduct insufficient to demonstrate her behavior was tumultuous or unruly characterized by **violent** disturbance or commotion. While Appellant may well have violated SARTA's "Courtesy Rules for Passengers", I find the evidence insufficient to support a conviction under R.C. 2917.11(A)(1).

_____

HON. WILLIAM B. HOFFMAN

---

[3] I am unconvinced Appellant's conduct resulted in inconvenience, annoyance or alarm to the three SARTA employees involved. It was part of Officer Watkins' regular duties to manage passenger conduct. Bus driver Johnson observed the commotion while seated in the driver's seat and stated it did not affect anybody trying to get on the bus. While witnessing the disturbance, SARTA supervisor Hogan did not testify he was caused any inconvenience, annoyance or alarm.